MASSACHUSETTS NORTHEASTERN STREET RAILWAY COMPANY
*vs.* PLUM ISLAND BEACH COMPANY.

Essex.    January 15, 1926. — February 26, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Contract,* What constitutes.  *Agency,* Scope of authority, Ratification of act of agent.  *Corporation,* Officers and agents.  *Evidence,* Competency, Telephone conversation.  *Practice, Civil,* New trial.

At the trial of an action upon an account annexed for labor and equipment furnished by a street railway corporation, the plaintiff, to the defendant, a corporation owning part of an island, for the building of a road for the defendant by an independent contractor, who in a contract in writing had agreed among other things to furnish all labor, materials, and equipment not found on the premises, it appeared that it was necessary that the contractor have the use of a work car or work cars and the power and tracks of the plaintiff in its work, and that the plaintiff was anxious to be relieved from the provisions of a lease relating to the operation of its cars in the defendant's territory.  After conferences between the plaintiff's president and the defendant's president, two letters were written of the same date, the first on letterhead of the plaintiff addressed to the defendant and signed by its president as such, and the second addressed to the plaintiff's president as such, signed in the name of the defendant by its president and having an indorsement of accord by the plaintiff's president as such.  In the first letter the plaintiff agreed to furnish to the defendant a motor car and dump cars with men according to arrangements to be made with the defendant's contractor.  In the second letter the plaintiff agreed to take up its track in the defendant's territory and the defendant agreed to relieve the plaintiff from the provisions of the lease.  The trial judge ruled that, if authorized, the letters comprised a single contract.  The defendant moved that a verdict be ordered in its favor because of such ruling.  The motion was denied.  *Held,* that the motion properly was denied, as a finding was warranted that it was the intent of the officers of the respective corporations that not one letter but both letters, read together, should speak the terms of their agreement.

There was further evidence at the trial above described, that the plaintiff's agreement was to furnish the defendant with a motor car and four dump cars during thirty days according to arrangements to be made between the defendant's contractor and the plaintiff, and that, at the request of the contractor's superintendent, without the knowledge of the defendant, not four dump cars for thirty days but one flat car was furnished for one hundred and forty-four days, and a motor car and

four dump cars for one day. There was further evidence that an authorized agent of the defendant ratified the changes. The defendant, in support of a motion for a verdict in its favor, contended that such change was not in modification of the contract but was an alteration of it by the plaintiff without the defendant's assent. The motion was denied. *Held,* that an exception to the denial of the motion must be overruled.

At the trial of the action above described, an issue was, whether a certain attorney at law had authority to ratify, on the defendant's behalf, certain modifications of the original contract between the parties, and, subject to an exception by the defendant, evidence was admitted tending to show that an officer of the plaintiff called the defendant's telephone number on the telephone and asked for one who was the defendant's president; that at that time there was only one person in the defendant's office with the surname of the president; that someone responded whose voice he did not recognize and stated that he was the person sought; that the plaintiff's officer then asked for the payment of the plaintiff's account and the person at the other end of the telephone responded that there was an adjustment desired in the bill, and that he would send to see the plaintiff's officer the attorney at law whose authority the evidence was admitted to prove; and that the interview thus arranged for followed. The attorney at law had been present with the plaintiff's president and the defendant's president at the time of the negotiations leading up to the contract which was the basis of the action and had taken part therein. *Held,* that the evidence was admissible.

To prove, at the trial above described, authority of the president of the defendant corporation to sign one of the letters above described, his signatures on a deed of the defendant company, as president, and on a check indorsed by him as an act of the defendant were admissible, in connection with other testimony showing his activities while president of the defendant corporation.

At the trial above described it was proper for the judge in his discretion to admit, in cross examination by the plaintiff of an agent of the defendant's contractor, testimony that the witness had paid nothing to the plaintiff on account of its claim.

At the trial of the action above described, it was proper for the judge to exclude testimony to the effect that the defendant's treasurer, upon receiving a bill from the plaintiff, had sent it to the defendant's contractor.

CONTRACT for $7,139.24 upon an account annexed of nineteen items. Writ dated January 19, 1921.

In the Superior Court, the action was tried before *Whiting,* J. The two letters which, as stated in the opinion, the trial judge ruled made a contract between the parties, were as follows, the first being on a letterhead of the plaintiff:

"June 1, 1920.

"Attention Mr. Mark Temple Dowling, President.
Plum Island Beach Company,
10 State St.,
Boston.

Dear Sirs:

"Confirming arrangements made today relative to freight service for hauling crushed stone between Plum Island Point, so-called, and a point opposite the old car barn, we agree to furnish you with a motor car, manned by a conductor and a motorman, together with four dump cars, at a price of $45 per day, this price to include cost of power, plus the actual amount paid by us in wages to the conductor and motorman.

"In addition to this, you are to assume any cost incident to track repairs and maintenance on the mileage involved, occasioned by the use to which you are to put our equipment.

"It is understood that the equipment is to be furnished for a period of approximately thirty days beginning as per arrangement to be made between the contractor and ourselves, and within ten days from date.

"It is further understood and agreed that the contractor using the company's equipment and men, shall provide insurance, holding the company harmless from any claims or suits growing out of injuries or damages occurring or claiming to have occurred in connection with the service and rental of equipment herein provided for; and that the Plum Island Beach Company assumes the oral guarantee of its President, Mr. Dowling, that the contractor will take out such insurance.

Yours very truly,
D. A. Belden,
President."

"June 1, 1920.

"David A. Belden, Esq., President,
Massachusetts Northeastern Street Rwy. Co.,
185 Devonshire St., Boston, Massachusetts.

Dear Sir:

"Confirming various conversations with regard to the rights and obligations of the Mass. Northeastern Street Rail-

way Company on Plum Island, I desire to submit on behalf of the Plum Island Beach Co., my understanding of our arrangements.

"The Plum Island Beach Co. is about to sign a contract for the construction of a road sixteen feet wide from the end of the Plum Island Turn-Pike to Plum Island Point, substantially paralleling the present tracks of the Mass. Northeastern Street Railway Co. and relying on my agreement with you, is arranging that said road shall be constructed to a width of only eight feet in certain places, the other half of the road to be constructed on your present roadbed when your rails are removed.

"When this road is completed, which will probably be in about six or seven weeks, the Plum Island Beach Co. understand that the Railway Company will forthwith at its own expense, remove its tracks and all other property now upon land owned by the Plum Island Beach Co. with the exception of the car barn which shall be removed not later than April 1, 1921.

"Upon the removal of the tracks the Plum Island Beach Co. is willing to release the Mass. Northeastern Street Railway Co. from all further obligations under a certain lease executed on Nov. 1, 1900 between the Citizens Electric Street Railway Co. (now the Mass. Northeastern Street Railway Co.) and the heirs of Moses Pettingell.

"Our company understands that the Railway Company will in turn give up all its rights under said lease dated Nov. 1, 1900 with the exception that until Nov. 1, 1921 it will continue, if required, to fulfill paragraph 7 of a lease entered into on Feb. 13, 1915 between the Mass. Northeastern Street Railway Co. and Paul B. Currier later assigned to George A. Woodsum, and later to Morris and Merrill, which reads as follows: —

"'(7) Said lessor hereby agrees that it will furnish said lessee with electrical current from its trolley wires for use in lighting said dance hall and will charge said lessee for same at rate of ten (10) cents per kilo watt hour, but said lessor does not guarantee such electrical service as being satisfactory for such use.'

"The Plum Island Beach Co. agrees that the rental owed by the Railway to the Plum Island Beach Co. under the lease dated Nov. 1, 1900, shall terminate the day upon which passenger service is discontinued as a result of work being started by the Railway Company to tear up its tracks.

"The Plum Island Beach Co. understands that the Railway Company will ask the insurance company for a permit allowing the second floor of the car barn to be used for dwelling purposes by the employees of the contractor hired by the Plum Island Beach Co. during the construction of the road from the car barn to the Point.    It understands, further, that the Railway Company will arrange with the contractor to loan rails necessary to continue the line at the Point to per-. mit the more convenient unloading of crushed rock from lighters during construction of the road.    Of course, our agreement is subject to the laws of Massachusetts regulating street railway companies.

Yours very truly,

Plum Island Beach Company

By Mark Temple Dowling

President.

"The above accords with my understanding of our agreement.

D. A. Belden,

Pres."

June 1, 1920."

Other material evidence and exceptions saved by the defendant are described in the opinion.

On the subject of the two letters above quoted, the judge in part instructed the jury as follows: "Now, I am going to speak of those two exhibits, . . . The parties in this case had some conference, and then, on June 1st, there were two letters written, . . . and these form between them, assuming that you should find that these were executed on the same day and as a part of the same transaction — they form be-tween them a complete written contract.    In construing that, the matter of the construction of the meaning of those words, so far as they are material — the words used — is for the court.

"Before going further with that, it may be desirable to say a word or two about the effect of a written contract which is a full and complete contract. In such a case the jury are to consider that the contract as written relates to the whole agreement of the parties, but in order to find out about it, it is proper and it is necessary to go into evidence of the surrounding circumstances so as to put the jury and the court in the position these parties then were, but that oral evidence cannot, as a general rule, be used to vary, alter or to modify the writings, . . . these two letters — as I say, assuming authority is found and assuming what I also have been over before exists — should be construed together; that is, as one instrument, — in all their phrases construed together."

There was a verdict for the plaintiff in the sum of $7,866. The defendant alleged exceptions.

*C. W. Dealtry*, for the defendant.

*J. P. Cleary*, for the plaintiff.

PIERCE, J. This is an action of contract, on an account annexed, to recover $7,139.24 for labor and equipment, used in the building of a road on Plum Island for the defendant, from June 14 to August 31, 1920, inclusive. The defendant's answer is a general denial, payment and an amended answer setting forth in substance, that, if any contract was made by the plaintiff with the defendant, such contract was beyond the authority and outside the employment of any officer or person purporting or alleged to have acted in behalf of the defendant. The case was tried to a jury in April, 1923, and a verdict was returned for the plaintiff in the sum of $7,866. The case comes before this court upon exceptions of the defendant to admission and exclusion of evidence, to denial of the defendant's motion at the end of the evidence that the trial judge order the jury to return a verdict for the defendant, to instructions given by the judge to the jury in his charge, to the refusal of the judge to give certain instructions to the jury as requested by the defendant, and to a denial of the defendant's motion to set the verdict aside.

The judge submitted to the jury these two questions: (1) "Was the Plum Island Beach Company acting as the representative of the Fitzgibbon Company when the June 1st

documents were executed?" (2) "If the jury answer the last question in the affirmative, did the officials of the Massachusetts Northeastern Street Railway Company at that time have knowledge that the Plum Island Beach Company was acting as the representative of the Fitzgibbon Company?" The jury answered question numbered (1) in the negative and made no answer to question numbered (2).

There was evidence as follows: The plaintiff corporation operated street car lines generally in the territory along the Merrimack River, and at one time it had a line running from Newburyport to Plum Island. Plum Island is an island lying easterly of Newburyport about three miles, and has been for many years a summer resort. The plaintiff had a lease of certain portions of the island running from the easterly portion of the island to a point at the easterly end of the Plum Island Turnpike, over which it operated its street car line. The defendant corporation, organized in 1919, late in that year purchased the greater portion of the easterly part of Plum Island and soon after began developments and the sale of house lots for summer homes. The lease also covered some ground on which there were certain buildings. The plaintiff, under its lease dated November 1, 1900, was obligated to operate street cars during certain seasons at certain regular intervals. Under another lease, dated February 13, 1915, with the defendant's predecessor in ownership of a pavilion, the plaintiff was obligated to furnish lighting for the pavilion, dance hall, et cetera.

On May 27, 1920, the defendant prepared, drafted and signed an instrument which purported to be an "AGREEMENT . . . between FITZGIBBON COMPANY . . . referred to as the 'Contractor'"and the defendant "referred to as the 'Owner.'" The Fitzgibbon Company was a partnership consisting of Thomas Fitzgibbon and Thomas Fitzgibbon, Jr. The "agreement" was signed by the partnership at some time between May 27 and June 10, 1920. By this contract the Fitzgibbon Company agreed to build a road at Plum Island for the defendant; to furnish all labor, materials and equipment, not found on the premises, necessary for the performance of its agreement; and to keep the work under

its personal control, and assume all responsibility for the work. It was necessary or advisable for the "Contractor," in order to facilitate the transportation of stone, tar and other items to be used in the building of the road, to have the use of a work car or work cars and the power and tracks of the plaintiff corporation. The plaintiff was desirous of cancelling its lease which still had some months to run, and relieving itself of its obligations thereunder.

There was evidence that about the first of June, 1920, Dowling, the president of the defendant corporation, accompanied by Mr. Bottomly, a lawyer, came to the office of Belden, the president of the plaintiff corporation, and had a conversation with him, wherein Dowling and Mr. Bottomly told Belden that the Plum Island Beach Company intended to build a highway on the island from Plum Island Point to the terminal of the old Plum Island turnpike, a distance of one and one-half miles; that they had arranged or intended to arrange for the delivery of stone for the road at Plum Island Point in barges; that they wanted to use the tracks and equipment of the plaintiff for the distribution of the stone and other material, and wished to make such arrangement with the plaintiff. Further conversation was had with respect to the eventual removal of the tracks of the plaintiff corporation and the cancellation of its lease prior to its expiration.

The defendant introduced evidence tending to prove that Dowling and Mr. Bottomly informed Belden at this conversation that the defendant was about to execute the contract agreement, above referred to, with the Fitzgibbon Company; that they informed Belden regarding various matters of this contract agreement, as the Fitzgibbon Company wanted to know that it could have the cars and what the cost would be before it would sign the contract.

On June 1, 1920, Belden had a further conversation with Mr. Bottomly, and Belden in the presence of Dowling dictated, and there was typed and handed to Dowling, a letter, which, after "confirming arrangements made today relative to freight service," in substance provided that the plaintiff should furnish the defendant a motor car manned by a con-

ductor and motorman, and four dump cars, at the price of $45 per day, including power, plus actual amount paid by the plaintiff in wages to the conductor and motorman for thirty days, beginning according to arrangements to be made between the plaintiff and the contractor, within ten days from date, the contractor providing insurance holding the company harmless from any claims growing out of the service and rental of the equipment.

On the same day Mr. Bottomly brought from Dowling to Belden an original and carbon copy of a letter dated June 1, 1920, signed "Plum Island Beach Company By Mark Temple Dowling President." This letter and carbon copy were introduced in evidence by the plaintiff. In substance this letter confirmed the various conversations regarding the rights and obligations under the leases of the plaintiff on Plum Island; it stated that the defendant was about to sign a contract for the construction of the road, that the plaintiff would at its own expense remove its track and other property from the land owned by the defendant, and other matters which need not be recited here. Belden testified that he wrote in pen and ink and signed the words "The above accords with my understanding of our agreement, D. A. Belden, Pres., June 1, 1920," at the bottom of the original and carbon copy; that he retained the original, and the carbon copy was returned to Dowling; that there were two originals of that letter; that he intended in that letter to make a contract between the plaintiff and defendant signed by both the parties.

The plaintiff did not furnish a motor car and four dump cars within ten days of June 1. It furnished a flat car commencing with June 14, not for thirty days, but for one hundred and forty-four days. It furnished a motor car and four dump cars for one day, July 8. The flat cars were furnished at the request of the "boss," who said "he could not use the dump cars and wanted . . . [the plaintiff] to give the flat cars." The construction work continued until the close of December, 1920, and the plaintiff furnished men and equipment during the progress of the work. There was evidence that it rendered bills to the defendant and wrote

letters demanding payment therefor.   There was further evidence that its president, treasurer and general manager made demand upon the defendant in person at its office in Boston, or by telephones to its president, and its attorney, for the payment of the account, and that at no time prior to the completion of the construction work did the defendant or any person in its behalf deny that the defendant was liable to the plaintiff for the services rendered as set forth in the declaration.   There was undisputed testimony that the services and equipment set forth in the declaration to the amount of $7,139.24 were actually rendered by the plaintiff.

In November Mr. Bottomly held a conversation with Belden in which he made complaint of the price ($40) at which the flat cars were billed.   The defendant was told that the flat car was substituted at the request of the contractor, and Belden agreed with the assent of Mr. Bottomly "that he would make the bill $32.50."   An amended bill was thereafter rendered by the plaintiff to the defendant during the progress of the work, at the rate of $32.50 a day, in accordance with the agreement of the plaintiff's president and the defendant's attorney, Mr. Bottomly.

The trial judge ruled, subject to exceptions by the defendant, that the two letters above referred to made a contract. On the defendant's exception to the judge's denial of its motion to direct a verdict for the defendant, it contends that those two letters did not together constitute a full, complete written contract between the plaintiff and defendant; and that, if they did, the furnishing of the flat cars without the knowledge of the defendant at the request of the contractor was not a modification of the contract, but an alteration of its terms by the plaintiff without the assent of the defendant.

The answer to the first position is that the letters themselves, read in the light of the negotiations between the parties on the day both letters were written and delivered, warrant a finding that it was the intent of the officers representing the plaintiff and defendant that not one letter but both letters read together should speak the terms of their agreement.

As regards the second position taken by the defendant, the jury were warranted on ample evidence in finding that the contract in relation to the furnishing of the motor car and dump cars was modified at the request of the defendant's contractor, and that the alteration was ratified by the defendant acting through its authorized agent, Mr. Bottomly. It follows that the testimony of Belden and of Webster relating to the conversations of Mr. Bottomly in regard to the substituted use of the flat car and to the price to be paid therefor, as well as the testimony of Mr. Bottomly in contradiction of the testimony of Belden and of Webster, was rightly submitted to the consideration of the jury.

As evidence of the authority of Mr. Bottomly to speak for the defendant, the plaintiff offered and the trial judge admitted, subject to the defendant's exception, an alleged telephone talk on November 1, between one Hood, the vice-president and general manager of the plaintiff, and Dowling, the president of the defendant corporation. The event may be described as follows: Hood called the telephone number of the defendant, in Boston, and asked for Dowling; a voice which he did not recognize said he was Dowling, whereupon Hood asked Dowling for payment of account. Dowling "said there were some matters in regard to the account which he would have Mr. Bottomly take up with Mr. Belden"; that "there was an adjustment desired on the bill and that he would have Mr. Bottomly see Mr. Belden." There was evidence subsequently introduced, through the testimony of Dowling, that the number of the defendant's telephone was that called by the plaintiff's manager, and that on November 1, 1920, there was no one else in the witness's office or in the defendant's office named Dowling. The evidence was sufficient to submit to the jury the question whether Hood had a conversation with a person at the office of the defendant who purported to be Dowling, and whether the person so answering, if a conversation was had, was in fact Dowling, the president of the defendant corporation. *Theisen* v. *Detroit Taxicab & Transfer Co.* 200 Mich. 136. L. R. A. 1918 D, 715. There is nothing inconsistent in *Lord Electric Co.* v. *Morrill*, 178 Mass. 304, *McCarthy* v. *Peach*, 186 Mass. 67, *Common-*

*wealth* v. *Wakelin*, 230 Mass. 567, *Commonwealth* v. *Harris*, 232 Mass. 588, *Larner* v. *Massachusetts Bonding & Ins. Co.* 238 Mass. 80, *Commonwealth* v. *Gettigan*, 252 Mass. 450.

For reasons herein above stated, the exceptions saved by the defendant to the admission of conversation between the plaintiff's representatives and Mr. Bottomly must be overruled, as also the exceptions saved to the alleged telephonic conversation with Dowling. The evidence offered in proof of the authority of Dowling, to wit, his signature on a deed of the defendant company as president, and of a check indorsed by him as an act of the defendant, in themselves had little if any probative value, but these acts were proper to be considered by the jury in connection with other testimony showing his activities while president of the defendant corporation. These exceptions must be overruled. The question and answer on cross-examination by the plaintiff of Henderson, agent of the contractor, to the effect that he had paid nothing to the plaintiff on account of its claim, were admissible in the discretion of the trial judge. The exclusion of the testimony as to what Draper, treasurer of the defendant, did with the September bill sent to the defendant by the plaintiff was right; it was immaterial what was the defendant's view of the nature of the first letter, dated June 1, 1920, and the fact that it sent that letter to Fitzgibbon would not tend to establish that the defendant was the contractor's agent and known to the plaintiff to be such.

The thirty exceptions to the judge's rulings on exclusion and admission of evidence and fifty-seven exceptions to the refusal of the judge to give instructions as requested by the defendant have been severally examined and considered in reference to the effect of the rulings on the defendant's defence to the plaintiff's case, and we find no material errors in the action of the judge which calls for a reversal of the verdict. The motion for a new trial was addressed to the discretion of the trial judge and raised no question of law or fact which was not raised at the trial, or was not then open to the defendant to raise. A discussion of each question raised by the exceptions taken at the trial or on the motion for a

new trial is impracticable, would extend the opinion inordinately, and could not change the result, which is that the exceptions must be overruled.

*Exceptions overruled.*