KATHERINE M. RICH *vs.* WARREN C. WEEKS.

Suffolk.    December 11; 1931. — June 27, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Evidence,* Competency, Telephone conversation.    *Broker,* Commission.

Evidence, at the trial of an action by a broker against a landowner for a commission, showing in substance that a plaintiff was given the full name and address of the defendant; that he looked up the defendant's telephone number, called the number and asked for the defendant, whereupon a man came to the telephone; that thereupon the plaintiff and a prospective customer who was with the plaintiff had a telephone conversation with the man concerning the customer's examining the property; that an appointment was made; and that subsequently the customer met the defendant and went to the property with him, warranted the trial judge in submitting to the jury the issue, whether the defendant was sufficiently identified as the person who talked with the plaintiff and the customer, notwithstanding testimony by the defendant denying that he ever saw or heard of the plaintiff until the commencement of the action and testimony by the plaintiff and the customer that they could not identify the defendant as the speaker over the telephone by recognizing his voice.

Further evidence at the trial above described, that the plaintiff secured a statement concerning the property from the defendant, who said he would pay the plaintiff a brokerage fee; that the defendant refused one offer from the prospective customer secured by the plaintiff and stated to the plaintiff his lowest selling price; that the customer was acting for another; that, in the absence of the plaintiff and without his knowledge, the customer induced his principal to execute a contract for the purchase of the property at a price greater than the defendant's lowest price; and that the sale thus was consummated, warranted a verdict for the plaintiff.

CONTRACT by a broker for a commission. Writ dated January 10, 1928.

The action was tried in the Superior Court before *Bishop*, J. The plaintiff testified that, after securing the offer from Walker for $10,000 or $10,500, she was called away for a time and did not learn of the sale from Hill to Bruce until after her return; and that she did not know anything of the contract between Hill and Bruce and had no part in making it. Other material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in his favor. There was a verdict for the plaintiff in the sum of $627.38. The defendant alleged exceptions.

The case was argued at the bar in December, 1931, before *Rugg*, C.J., *Pierce, Wait,* & *Field,* JJ., and afterwards was submitted on briefs to all the then Justices.

*A. V. A. Thomason,* (*C. S. Hartwell* with him,) for the defendant.

*J. M. Graham,* (*A. Robinson* with him,) for the plaintiff.

PIERCE, J. This is an action of contract, tried in the Superior Court to a jury, wherein the plaintiff sought to recover a sum of money as a commission for having, as she alleged, effected the sale of premises at number 8 Maitland Street, in Boston, from one Hill to the nominee of one Bruce. At the conclusion of the testimony the defendant filed a written motion for the direction of a verdict for the defendant; this motion was denied and the defendant duly excepted. The jury returned a verdict for the plaintiff. The case is before this court on the defendant's exceptions saved to the admission in evidence of certain telephone conversations which the plaintiff testified passed between the defendant and herself, and to the refusal of the judge to direct a verdict for the defendant upon the defendant's motion.

Respecting the issue of the admission of the telephone conversations, the defendant testified that he and one John F. C. McCarthy owned the property jointly and that McCarthy was deceased; and he denied ever having had any conversation with the plaintiff. The plaintiff testified, in substance, that she was in the real estate brokerage business; that McCarthy gave her the full name and address of the defendant, Warren C. Weeks; that she looked up his number in the telephone book; that she asked for Weeks

over the telephone; that she first asked the operator for a number and some one answered; that she had some talk when she got the telephone number and asked for Weeks and some one replied; that when she asked for Weeks she thought she was talking with the stenographer and she asked for Weeks and he came to the telephone; that, later on, she called the same telephone number and asked for Weeks; that at that time one Walker was present at her end of the telephone; that some one answered the telephone and after she talked with some one she put Walker on the line and he talked with some one on the line; that before she introduced Walker to Weeks on the telephone she told him (Weeks) that she had Walker over to the property and that he was very much interested and would like to see all the suites and asked if he (Weeks) could make an appointment to show them because the tenants were annoyed and did not want to show them; that she told Weeks that Walker represented Bruce and that she would like to have him meet him and take him through the building; that she said, "I would like to have you meet Mr. Walker now; he is right here. I will put him on the telephone. This is Mr. Walker who represents Mr. Bruce"; that she heard the conversation at her end of the line and the subject of it was the real estate at 8 Maitland Street; that she recognized the voice the second time on the telephone and it was "the same voice with which she talked the first time." The testimony of the plaintiff was then suspended and Walker was called as a witness. He testified that the plaintiff called on the telephone and made an appointment; that he heard her call for Weeks; that some one apparently talked with her over the telephone; that he got in on that conversation and talked with the party on the line; that he had been introduced to Weeks over the telephone as the Walker who was being introduced to Weeks, so he addressed him as Weeks; that the subject matter of the conversation over the telephone with the person who was introduced to him as Weeks was the property at 8 Maitland Street; that subsequently to that day he met Weeks and went with him to the property; that Weeks was the defendant in this case; that

after that he talked with Weeks and they went all through the property and spent probably half an hour there on that occasion. This witness was asked by the judge: "Did you recognize the person that you met at your office and went with to the property as the person that you talked with on the telephone early on the same day?" and he answered: "I had no cause to think otherwise; I never gave it a thought but what it was the same man; I don't know whether I could swear whether I could have recognized him from his voice or not at this late date." The plaintiff being recalled testified that she did not go to the property with Weeks and Walker; that when she talked with Weeks over the telephone she said, "Do you want me to go or will it be all right to have him [Walker] go alone?" and that he said, "Sure, that is all right. I will meet him down town and take him out"; that she never saw Weeks, never went to his office; that "she would not recognize Mr. Weeks's voice now but she would then."

On the above testimony which contains all the evidence material to the decision by the trial judge of the preliminary issue of whether the conversation over the telephone should be submitted to the jury, a majority of the court think the testimony relating to the conversation between the plaintiff, Walker and some one purporting to speak in the name of the defendant justified the trial judge in submitting to the jury the issue whether at the time and place stated in the plaintiff's testimony, Weeks was sufficiently identified as the person who successively talked with her and Walker, notwithstanding the testimony of Weeks at the trial that "he never saw or heard of the plaintiff . . . until the service of the writ upon him and had no conversation with her concerning the transaction," and in the light of the attendant and subsequent circumstances the jury would be warranted in finding that the telephone conversation was had, as testified by the plaintiff and Walker, with some one at the business office of the defendant who purported to be the defendant and as such made an appointment with Walker to meet Weeks at a certain time and place to go together to visit the property at 8 Maitland Street with a

view to its sale and purchase, and that Weeks and Walker kept the appointment and visited the property. From all the testimony the jury would be further warranted in finding circumstantially that Weeks was the person who spoke in his name at the conversations as they appear in the testimony of the plaintiff and of Walker, and thus find identification of the person without recognition of the voice of the speaker. This is sufficient. *Massachusetts Northeastern Street Railway* v. *Plum Island Beach Co.* 255 Mass. 104. See *Dorchester Trust Co.* v. *Casey,* 268 Mass. 494, where there was nothing in the record to identify one of the persons between whom the conversation is claimed to have taken place.

Assuming the conversation was found by the jury to have taken place as the plaintiff testified, they would have been warranted in finding that the plaintiff said to Weeks over the telephone, " 'This is Katherine M. Rich speaking. I talked with Mr. McCarthy on 8 Maitland Street and he told me to call you, that you were the man to call and that you would send me a statement of the property. I have a client, a prospective purchaser, whom I think is interested in it.' He [Weeks] said, 'Why, certainly.' He asked me where my office was and I told him that my office was at 2076 Massachusetts Avenue, Cambridge, and that I would like a statement on the property, and after I got the statement I would call him." She further testified, and the jury could find, that when she telephoned Weeks he gave her the main features of the property and said that he would mail a statement; that she received a statement; that she asked him if he would pay a brokerage fee and he said yes. She further testified that she submitted an offer from Walker, "something like $10,000 or $10,500"; that Weeks said "No, the lowest I will let it go for is fourteen five." It was in evidence, testified to by the defendant, that Walker represented one Bruce; that Walker induced Bruce to enter into a written contract for the purchase of the premises from one Hill, a straw, in whose name the title stood; that the written contract between Hill and Bruce was executed and the property conveyed to a man named Bruce; that

the consideration paid was $15,000.  It also appears in the testimony of the defendant that he and McCarthy owned the property jointly.

On the above facts it is plain in the absence of an express agreement as to compensation between the plaintiff and defendant that if the jury believed the testimony of the plaintiff, she became entitled to be paid by the defendant the usual and customary brokerage fee, if, and when, she procured a customer for the property on the defendant's terms. No exception being taken to the charge it must be assumed, and is assumed, that the jury were fully instructed as to the measure of the plaintiff's right to recover in terms of damage. We think the case was rightly submitted to the jury and that the exceptions must be overruled.

*So ordered.*