IRVING TANNING COMPANY *vs.* BENJAMIN SHIR & another.

Suffolk.    May 20, 21, 1936. — September 9, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Contract,* Parties. *Sale,* What constitutes. *Frauds, Statute of. Evidence,* Competency, Telephone conversation. *Agency,* What constitutes, Ratification.

A verbal promise to pay for goods to be shipped to another might be found to be an original promise not within the statute of frauds.
At the trial of an action for the purchase price of merchandise, testimony by the office manager of the plaintiff, admitted *de bene*, that he called

the defendant's telephone number as it appeared in the telephone book and asked for the defendant's bookkeeper, that a woman answered and conversation ensued as to whether the defendant would authorize the purchase, and that after a wait an answer was given by the woman in substance that it was authorized, properly was not struck out in view of later evidence that subsequently the defendant personally approved invoices sent him by the plaintiff and never disavowed liability; the whole evidence warranted a finding that the statement of the bookkeeper either was authorized by the defendant or afterwards was ratified by him.

CONTRACT. Writ in the Municipal Court of the City of Boston dated June 4, 1934.

On removal to the Superior Court, the action was heard without a jury by *Goldberg,* J., who found for the plaintiff in the sum of $977.45. The defendants alleged exceptions.

The testimony of the plaintiff's office manager as to telephone conversations with one purporting to be the defendants' bookkeeper, described in the opinion, and testimony of the plaintiff's president and general manager respecting a portion of those conversations overheard by him, were admitted *de bene.* The bill of exceptions, as to the testimony of the plaintiff's office manager, contains the statement that at "the close of the testimony the defendants seasonably moved to strike out the evidence of the foregoing conversation admitted *de bene.* The court denied the motion and the defendants seasonably excepted." The recital of the testimony of the plaintiff's president and general manager was in the next paragraph of the bill and was followed by the same statement as to denial of a motion to strike out the evidence and exception thereto.

*J. C. Johnston,* for the defendants.

*A. L. Sherin,* for the plaintiff.

QUA, J. The plaintiff, a tanner of leather with an office in Boston, seeks to recover the purchase price of three shipments of tanned white sheepskins claimed to have been ordered by the defendants in April, 1934. The skins in each instance were shipped by the plaintiff to the Indian Head Shoe Company, which operated a shoe factory at Nashua, New Hampshire. The defences now insisted upon are a general denial and the statute of frauds.

For about a year before the shipments the Indian Head Shoe Company had sold substantially its entire output to the defendants, who were wholesalers in Boston, doing business under the name of "Benjamin Shir." Because of the financial condition of the Indian Head Shoe Company and in order to enable it to secure materials for the manufacture of shoes to be delivered to the defendants, the latter had promised to pay materialmen the price of materials delivered by them to that company. On each of the three occasions in question the Indian Head Shoe Company ordered skins from the plaintiff. There was evidence that upon receipt of the first order the plaintiff's office manager called the defendants' telephone number as it appeared in the telephone directory and asked for the defendants' bookkeeper; that a woman answered; that the plaintiff's manager told the woman that the plaintiff could not ship to the Indian Head Shoe Company because that company was not "rated," but that the plaintiff "would ship to the Indian Head 'if Benjamin Shir would pay the bill'"; that after waiting a time at the telephone, the plaintiff's manager was told "that the shipment would go through" and to send the bill to the defendants; that upon receipt of the second order the plaintiff's manager made a similar telephone call, asked for the bookkeeper, and had a conversation with the woman answering the telephone which was practically a repetition of the first conversation; that the plaintiff's manager asked if it would "be all right to ship and charge the bill to them [the defendants] as before," and was told by the woman to make the shipment as usual; that upon the third occasion the plaintiff's manager called on the telephone for the bookkeeper, asked in substance whether it was "all right" to ship, held the line "for some time" and then was told to make the shipment and to send the bill to the defendants. On each occasion the plaintiff, on its books of account, charged the price of the shipment to the defendants and sent to the defendants an invoice wherein the goods were described as sold to the defendants.

We think it quite plain that if the defendants were bound by the telephone conversations, the evidence will support a

finding that by the understanding of the parties, the plaintiff shipped the goods to the Indian Head Shoe Company on the sole credit of the defendants, and that the defendants became liable to pay the price on an original undertaking of their own to which the statute of frauds is not a defence. *Cahill* v. *Bigelow*, 18 Pick. 369. *Swift* v. *Pierce*, 13 Allen, 136. *Dean* v. *Tallman*, 105 Mass. 443. *Barrett* v. *McHugh*, 128 Mass. 165. *Hammond Coal Co. Inc.* v. *Lewis*, 248 Mass. 499. *Colpitts* v. *L. C. Fisher Co.* 289 Mass. 232, 234.

The principal questions in the case are whether the evidence of the telephone conversations was admissible at all and whether, if it was admissible, a finding could properly be made that the woman who answered at the defendants' telephone had authority to bind the defendants. These questions are closely related. Further evidence bearing upon these issues was that the defendants employed in their office only two women, one a bookkeeper and the other an "assistant"; that after each shipment, when the plaintiff's invoice charging the goods to the defendants came in, the defendants' bookkeeper stamped it "Approved" and, in accordance with her custom, showed it to the defendant Samuel Shir, who had full authority to act for the defendants and who wrote his initials beside the word "Approved" on each invoice and directed the bookkeeper to file it. Also about May 1 and about June 1 statements were sent by the plaintiff to the defendants wherein the goods were charged to the defendants. These were turned over to Samuel Shir for his examination. Upon receipt of the invoices and statements the defendants sent no communication to the plaintiff disavowing liability. After the bills became due the defendants, without otherwise denying liability, stated that they would pay them when they became indebted to the Indian Head Shoe Company for goods delivered by that company to the defendants. Both of the defendants testified that they had intended to pay them out of moneys that might become due from the defendants to the Indian Head Shoe Company. It is unnecessary to state the evidence tending either way in greater detail.

It could be inferred that when the plaintiff's manager

called the defendants' telephone number and asked for the defendants' bookkeeper the woman who answered was the defendants' bookkeeper. *Massachusetts Northeastern Street Railway* v. *Plum Island Beach Co.* 255 Mass. 104, 114. *Rich* v. *Weeks,* 279 Mass. 452. *A. T. Stearns Lumber Co.* v. *Howlett,* 260 Mass. 45, 73. *Theisen* v. *Detroit Taxicab & Transfer Co.* 200 Mich. 136. Wigmore on Evidence (2d ed.) § 2155. From the defendants' subsequent conduct and admissions, particularly the unqualified approval of the invoices, apparently in the regular course of business, even though this approval was not communicated to the plaintiff, we think further reasonable inferences could be drawn either that the defendants had authorized their bookkeeper to contract for the goods, possibly during the otherwise unexplained pauses in the telephone conversations, or that the defendants, after knowledge of her acts, ratified them. Ratification of unauthorized acts of an agent is readily inferred where, after knowledge, the principal makes no effort to repudiate them. *Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 330, and cases cited. This statement is particularly applicable where the principal knows that third parties are continuing to act in reliance upon the supposed authority. *Auringer* v. *Cochrane,* 225 Mass. 273.

No error of law is shown either in admitting the disputed evidence or in the finding for the plaintiff.

*Exceptions overruled.*