LEONARD VIRTA *vs.* LARRY MACKEY.

Worcester.    September 25, 1961. — December 7, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & KIRK, JJ.

*Fraudulent Conveyance. Evidence,* Telephone conversation, Judicial discretion, Examination of adverse party, Cross-examination, Declaration of deceased person, Relevancy and materiality.

Evidence of the circumstances in which, a few days before the commencement of an action against owners of land, they conveyed the land for a substantial price to a young immigrant who purportedly borrowed the amount of the price upon his unsecured note, together with evidence of a conveyance of the land by the immigrant to the purported lender and his wife a few months later and of a simultaneous cancellation of the note and evidence that the immigrant subsequently said to the plaintiff in the action "I never did own . . . [the land]. It was only put in my name. The reason is, in case you win your . . . [action] you wouldn't be able to collect on it," warranted findings that the immigrant was a mere straw and that the conveyance of the land to him was made with actual intent to hinder, delay or defraud creditors and was fraudulent under G. L. c. 109A, § 7.    [290–291]

Testimony that a telephone call was made by the witness to an unidentified address and that someone who answered said that he was a certain person and gave certain information in answer to questions by the witness did not warrant the admission of what was said by the answerer as statements made by such person.    [291]

At a trial on a writ of entry involving the issue whether a conveyance of land to the tenant was fraudulent, where a grantor in such conveyance was called as a witness by the demandant, cross-examination of the witness by the demandant was permissible in the discretion of the judge as essentially cross-examination of an adverse party.    [291]

No error appeared at a trial in the exclusion of evidence of statements made by one dead at the time of the trial where the record did not show making of the findings required by G. L. c. 233, § 65, or any offer of proof.    [292]

The ability of the grantee in a conveyance of real estate to obtain a mortgage thereon was immaterial to the issue whether the conveyance had been fraudulent.   [292]

WRIT OF ENTRY in the Land Court dated April 14, 1958.

The case was heard by *McPartlin, J.*

*Edward C. Maher,* for the tenant, submitted a brief.

*John J. O'Connell,* for the demandant.

WILLIAMS, J.  This is a writ of entry brought in pursuance of the provisions of G. L. c. 223, § 127, to establish the title or interest of the demandant in land and building at 164 Richmond Avenue, Worcester, hereinafter referred to as the locus, which he attached in an action of tort against Arne and Mati Aksila, trustees of A. M. A. Homes Realty Trust.  The property was attached as that of the defendant trustees standing in the name of the tenant to whom, it was contended, conveyance had been made by the trustees in fraud of creditors.  The demandant first brought an action against Arne and Mati Aksila personally and attached land standing in the names of Ames and Katherine Aksila, but on October 13, 1949, application was made for a dissolution of the attachment and the writ was never entered in court.  On October 14, 1949, Arne and Mati Aksila, who owned the locus as trustees aforesaid, conveyed it to the tenant for $15,000 subject to a bank mortgage of approximately $12,000.  On October 19, 1949, the demandant commenced the action against Arne and Mati as trustees.  On January 18, 1950, the tenant conveyed the locus, subject to the demandant's attachment, to Ames and Katherine Aksila as tenants by the entirety by a deed which was not registered until August 25, 1952.  On August 24, 1954, the tenant filed a bond in the amount of $25,000 with Ames and Katherine Aksila, as sureties, to dissolve the attachment in pursuance of the provisions of G. L. c. 223, § 127.  On April 29, 1957, the demandant recovered judgment in his tort action against the trustees, and execution issued on May 16, 1957, in the amount of $23,226.67 with costs of $49.55.

This writ of entry was entered in the Land Court on

May 5, 1958. The demandant alleged seisin in the locus and unjust disseisin by the trustees to his damage in the sum of $25,000. See G. L. c. 237, §§ 3, 4, and 5. The tenant answered denying the allegations in the writ and pleaded nul disseisin. The case was tried on the issue of whether the conveyance of October 14, 1949, was in fraud of the demandant as a judgment creditor of the trustees.

There was evidence that Ames and Arne were brothers and sons of Mati Aksila. At some time in 1949, Ames and his wife Katherine sold the locus to Mati, title being taken in the names of Mati and Arne as trustees aforesaid. The tenant Mackey was a nephew of Katherine, the wife of Ames. He came to this country from Finland at the age of twenty-nine years at some time in 1949. He brought with him $50, all that he was allowed to take from his home country. He had some knowledge of the English language. On arriving here he lived with his aunt and worked as a carpenter's helper for Ames on the house at 164 Richmond Avenue which was being built by Ames. In October, 1949, Ames loaned him $15,000 to purchase the locus from the trustees. He took the money to the Worcester County Trust Company and received in return two treasurer's checks, each for $7,500, payable to the tenant. These checks were in evidence and appeared to have been indorsed by the tenant and by Arne and Mati, respectively. There was no evidence as to whether they had been deposited or cashed. No mortgage was given by the tenant to Ames, but there was evidence that Mackey gave Ames a note for $15,000 which, on the conveyance of the locus to Ames and Katherine in January, 1950, was destroyed. In February, 1959, according to the testimony of the demandant, he met the tenant in Florida and asked him if he was going up to Boston the coming June and he said that he was not. "I [the demandant] said, 'Why not, after all, you have an interest in it. Ain't you supposed to own that property up on Richmond Avenue?' So he says, 'I don't own it. I never did own it. It was only put in my name. The reason is, in case you win your case against Arne Aksila you wouldn't be able to collect on it.' That was that."

At the conclusion of the evidence the judge granted requests by the tenant for rulings that the evidence was insufficient to warrant a finding that the grantors were insolvent at the time of the transfer, or that they were rendered insolvent by the transfer, or that the transfer was made without fair consideration. He also granted requests by the tenant for rulings that fraud is never presumed but must be affirmatively proved, and that the burden of proof that the transfer was fraudulent was on the demandant. He denied requests by the tenant for rulings that the evidence was insufficient to warrant a finding that the transfer was fraudulent, or that the tenant was not a bona fide purchaser for value, or that the transfer was made with actual intent by the grantors to hinder, delay or defraud present or future creditors, or that such creditors of the grantors were in fact hindered, delayed or defrauded, or that Mackey had knowledge of the alleged fraud at the time of the transfer.

The judge found "that the demandant is a creditor within the meaning of the statute; that the judgment is wholly unsatisfied; that the present action was commenced within the period allowed under the statute; that the property was transferred to the tenant with actual fraudulent intent to defraud, hinder and delay creditors; that the transfer was made for the purpose of preventing the satisfaction of any execution issuing upon a judgment which might be obtained by the demandant in his action at law; that the demandant was in fact hindered, delayed and defrauded by said conveyance; that the tenant knew of the fraudulent purpose of the trustees; that the tenant participated in said fraudulent purpose; and that the transfer was a fraudulent conveyance." He ruled "that the interest or title in the demanded premises was fraudulently conveyed within the meaning of the 'Uniform Fraudulent Conveyance Law,' G. L. . . . c. 109A; that judgment is to be entered for the demandant; and that an execution for costs is to issue in accordance with the provisions of G. L. . . . c. 223, § 127." The tenant excepted to the finding and decision of the court, to the order that judgment be entered for the demandant,

to the denial of his requests for rulings, and to rulings on matters of evidence, hereinafter to be considered.

It is provided by G. L. c. 109A, § 7, that "Every conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

It is provided by G. L. c. 223, § 127, that where an attachment is made of land which has been fraudulently conveyed by the debtor to a third person (§ 67), "the person in whose name the record title of the property attached stands . . . may, before final judgment, dissolve the attachment by giving bond to the plaintiff, with sufficient sureties, conditioned to pay to him, if he establishes his title to the land in a writ of entry against the person having the record title thereto at the time of the attachment, the ascertained value of the land, or so much thereof as shall satisfy the amount, if any, which the plaintiff shall recover upon final judgment . . . in the action in which such attachment was made. . . . In the trial of such writ of entry, the record of the attachment and of final . . . judgment . . . in the action in which the attachment was made shall be conclusive evidence of a momentary seisin of the land in the plaintiff to enable him to maintain an action therefor upon his own seisin . . . . If the demandant recovers judgment on such writ of entry, he shall not have an execution for possession, but may have an execution for costs."

Findings of fact must stand if warranted on any view of the evidence with its justifiable inferences. *Lyon* v. *Parkinson*, 330 Mass. 374, 375, and cases cited. See *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. In view of the testimony of the demandant as to his talk with the tenant, it cannot be said that the judge, who saw and heard the witness, was not warranted in finding that the locus was transferred to the name of the tenant to avoid attachment by the demandant and with actual intent to hinder, delay or defraud creditors. G. L. c. 109A, § 7. The unsecured loan of a large amount of money to a young immigrant, the lack of evidence as to the disposal of the two $7,500 checks, the

conveyance by the tenant to Ames and Katherine within a few months and the destruction of the alleged note, tended to support the judge's conclusion that the tenant was used as a "straw."

There was no error in the denial of the tenant's requests for rulings.

There were several exceptions to rulings on evidence.

A secretary in the office of the demandant's attorney testified that on September 29, 1949, she made a telephone call to some address not stated, and the person who answered said he was Arne Aksila. She asked for the price of the locus, if it were for sale, the number of rooms, and if she could obtain a mortgage. The voice in answer said the house was for sale, it was unfinished, the price was $60,000 and she could obtain a mortgage for $30,000; there were nine rooms, two baths, and maid's quarters; and that he was the owner. The tenant excepted to the evidence and later moved to strike it out on the ground of lack of identification of the speaker. We think that the evidence did not warrant the admission of the answer to the telephone call as a statement made by Arne. Compare *Massachusetts Northeastern St. Ry.* v. *Plum Island Beach Co.* 255 Mass. 104, 114; *Rich* v. *Weeks,* 279 Mass. 452, 456. It was not, however, reversible error. The statement of the selling price of the property, purportedly by Arne, did not affect the ultimate finding of the judge, since he ruled that the evidence did not warrant a finding that the transfer was made without fair consideration. The admission of the statements attributed to Arne did not harm the tenant.

Exceptions to the questions put by the demandant to Arne, whom he called as a witness, in the form of cross-examination, are without merit. The nature of the examination was discretionary with the judge. *Commonwealth* v. *Turner,* 224 Mass. 229, 237–238. Arne was essentially, although not technically, an adverse party.

On cross-examination of Ames Aksila the tenant asked him for conversations between the tenant and himself which were excluded because the demandant was not present. It did not appear what answer was expected or that the tenant

would have benefited by its admission.   There seems to have been no error.   See *Commonwealth* v. *Doyle,* 323 Mass. 633, 635; *Perry* v. *Carter,* 332 Mass. 508, 513.   A question asked the tenant by his counsel as to what conversation he had with Mati a week or two before the transfer was excluded subject to the tenant's exception.   Mati was dead at the time of the trial.   The record shows no preliminary findings as to the personal knowledge and good faith of the declarant (see G. L. c. 233, § 65) and there was no offer of proof.   No error is shown.   *Rothwell* v. *First Natl. Bank,* 286 Mass. 417, 420–421.   *Reardon* v. *Murdock,* 292 Mass. 362, 366.

The tenant was asked on direct examination, "Were you able to get a mortgage anywhere on 164 Richmond Avenue." On its exclusion the tenant offered to prove that the attachment of the demandant prevented him "from raising the mortgage amount."   There was no error.   The inability of the tenant to obtain a mortgage was not material to the issue of a prior fraudulent conveyance.

*Exceptions overruled.*