COMMONWEALTH vs. DELRUE LAFAYETTE ANDERSON.

Suffolk. February 7, 1989. — May 1, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Telephone conversation, Scientific test, Presumptions and burden of proof, Consciousness of guilt. *Identification. Practice, Criminal*, Disclosure of evidence, Required finding, Instructions to jury, Capital case. *Homicide. Malice.*

In a murder case, testimony of two women was properly admitted at trial stating the substance of inconsistent statements in separate telephone conversations they had had with a man who, on the day after the homicide, answered the telephone at the apartment that the victim and the defendant had shared where, even though each woman testified that she had never met the defendant, there was voice recognition based on previous telephone calls; where there was evidence that the defendant was the only male who lived at the apartment, and where statements made by the man who answered the telephone tended themselves to confirm his identity as the defendant. [769-770]

At a murder trial in which the defendant alleged that testimony of an expert witness concerning positive results of benzidine tests should not have been admitted in evidence because the expert's written report had not revealed the positive test results and the defendant had not been provided information before trial that certain items found in his apartment had in fact tested positive for blood, the defendant was not prejudiced by the expert's testimony, where defense counsel had pretrial notice in another form of the positive test results. [770-771]

At the trial of an indictment for murder in the first degree, there was sufficient evidence to warrant the jury in finding beyond a reasonable doubt that the defendant killed the victim with malice and with both deliberate premeditation and extreme atrocity or cruelty. [771]

At the trial of an indictment for murder in the first degree, the evidence did not warrant an instruction to the jury on manslaughter; moreover, because there was no evidence raising the issues of justification or provocation, the judge's charge to the jury defining malice as encompassing "all intentional killing" was not prejudicial to the defendant; furthermore, the judge's instructions to the jury on deliberate premeditation, reasonable doubt, and consciousness of guilt presented no occasion for relief under the power granted this court by G. L. c. 278, § 33E. [771-773]

INDICTMENT found and returned in the Superior Court Department on July 11, 1979.

The case was tried before *John T. Ronan*, J.

*Bruce Ferg* for the defendant.

*Susan Underwood*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was convicted in February, 1986, of murder in the first degree of Bobbie Jean Graham on the theories of deliberate premeditation and extreme atrocity or cruelty. Her body, badly injured by multiple blunt force injuries, was found on Monday, May 7, 1979, in an alley behind 269 Commonwealth Avenue in Boston. The victim lived with the defendant at 293 Commonwealth Avenue where he was the superintendent.

The defendant was convicted because of the voluntary cooperation of a large number of citizens who came forward shortly after the announcement of the killing of a black woman in the Commonwealth Avenue area. From these various witnesses the Commonwealth was able to present evidence that sometime between 9 P.M. and 11 P.M. on Sunday, May 6, 1979, a black couple walked up Newbury Street. She appeared to be extremely drunk or under the influence of drugs. She was stumbling, had trouble walking, and was almost a dead weight. The man was dragging her, nearly carrying her. He was angry and impatient and would yank her. She was five feet three or five inches tall; he was six feet tall or more. Various witnesses recorded their slow progress. A witness who lived on Gloucester Street saw the couple in an alley. The woman was under the man's arm; she slipped down; he yanked her up; and he dragged her. In the alley behind 291 Commonwealth Avenue, he dropped her, picked her up, and carried her over his shoulder as he walked toward Hereford Street. The victim's body was found in the alley the next morning.

Some of the witnesses who came forward were able to identify a picture of the defendant. Others were able to refer to the couple and their behavior without making a positive identification of the defendant. Certain other inculpatory evidence, whose admissibility is challenged, was introduced. We shall

discuss these challenges. The defendant left Boston, and, while living under a different name, in September, 1984, he was arrested on another charge in Seattle, Washington. Investigation led to his arrest on the charge of interstate flight to avoid prosecution.

We affirm the conviction and see no basis for exercising our responsibility under G. L. c. 278, § 33E (1986 ed.), in the defendant's favor.

1. Testimony was properly admitted from two women stating the substance of separate telephone conversations they had had with a man who, on the day after the homicide, answered the telephone at the apartment that the victim and the defendant had shared. Each woman testified that she had never met the defendant but had spoken with him on previous occasions. The conversations demonstrated that the defendant gave inconsistent statements as to what he and the victim had done the previous night.

One witness, a coworker, testified that she talked with the victim almost daily and that, when she called, a man answered the telephone about half the time. She knew that only the victim and a man named "Dee Anderson" lived in the apartment. The voice she heard when she dialed the victim's telephone number on the morning after the murder was the same voice she had heard previously. The man, whom she called "Dee" without any objection from him, told her that he and the victim had been at his mother's the previous evening and that around Egleston Station he had left the victim who said she was going to the witness's house.

The other witness who testified to a telephone conversation purportedly with the defendant was a sister of the victim. She dialed her sister's telephone number on the afternoon after her death and recognized the voice of the defendant whom she had never met but had spoken to on the telephone. The defendant told the witness that he did not know that a "black girl" had been killed on Commonwealth Avenue[1] and that the victim

---

[1] This statement was inconsistent with the testimony of a police officer that he had told the defendant of the killing at a time the evidence showed was before the telephone call was made.

was not home. She testified further that the defendant said they had gone out the night before and after they came home, the victim wanted to go back out.

A telephone conversation between a witness and a person the witness had never met may be admitted when confirming circumstances tend to authenticate the identity of the other person, even if (unlike the case before us) the witness does not recognize the voice. See *Commonwealth* v. *Hartford*, 346 Mass. 482, 488 (1963); *Rich* v. *Weeks*, 279 Mass. 452, 456 (1932); *Massachusetts Northeastern St. Ry.* v. *Plum Island Beach Co.*, 255 Mass. 104, 114 (1926); Proposed Mass. R. Evid. 901 (b) (5) and (6). Cf. *Virta* v. *Mackey*, 343 Mass. 286, 291 (1961) (no evidence of identity of person who answered the telephone). In this case, there was voice recognition based on evidence of previous telephone calls and evidence that the defendant was the only male who lived at the apartment to which the calls were placed. Statements made by the man who answered the telephone tended themselves to confirm his identity as the defendant. The evidence was properly given to the jury.

2. The defendant complains that testimony of a criminalist concerning positive results of benzidine tests should not have been admitted in evidence. He asserts that the criminalist's written report did not reveal the positive test results and that he was not provided information before trial that certain items found in the apartment had in fact tested positive for blood. The failure to make such a disclosure, he claims, violated an agreement stated in the pretrial conference report filed pursuant to Mass. R. Crim. P. 11 (a) (2) (A), 378 Mass. 862 (1979).

The defendant argues that the disclosure of this information in the middle of the trial was prejudicial because he was not able to obtain his own expert testimony on the question. Although the laboratory report did not disclose that mop strings and wash cloths had initially tested positive for blood, defense counsel had pretrial notice in another form of the positive test results. The Commonwealth did not fail to comply with the pretrial conference report in any way prejudicial to the defendant.

The record does not show that the defendant was probably deprived of a substantial ground of defense by his counsel's failure to grasp the inconsistency in the pretrial information about the results of benzidine tests. We can conceive of no basis on which the test results might have been excluded from evidence if, before trial, defense counsel had had not only notice but actual knowledge of the test results.

3. The defendant argues that there was insufficient evidence to warrant a finding beyond a reasonable doubt that he killed the victim. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). We disagree. The circumstantial evidence in this case justified the jury's verdict. *Commonwealth* v. *Porter*, 384 Mass. 647, 654 (1981).

Witnesses identified the defendant's photograph as that of the man who was with the victim the night before her body was found. There was evidence of physical abuse of the victim by the man who was with her. Her body was found in the same alley in which the man was seen physically abusing her. A wet mop and wash cloths with evidence of human blood were found in the apartment that the defendant shared with the victim. The defendant made inconsistent statements the next day about what the victim had done the night before. The day after he was interviewed by the police the defendant withdrew almost all of his money from a bank and went to Seattle where he lived under an assumed name.

There is no question that the jury were warranted in finding that whoever committed the crime did so with malice and with both deliberate premeditation and extreme atrocity or cruelty. The defendant does not argue to the contrary.

4. We reject the defendant's various challenges to aspects of the judge's charge.

The evidence did not warrant an instruction on manslaughter. There was no evidence of provocation. The victim was virtually · helpless.

The judge did not define malice in traditional terms. He told the jury that malice encompasses "all intentional killing." See *Commonwealth* v. *McInerney*, 373 Mass. 136, 140 (1977); *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309 (1926). Be-

cause there was no evidence in this case raising the issues of justification or provocation, the charge on malice was not prejudicial to the defendant. There is no substance to the defendant's claim that the charge shifted the burden of proof on malice to him. In any event, the pivotal issue in this case was the identity of the killer and not malice. See *Commonwealth* v. *Lee*, 383 Mass. 507, 513 (1981).

Under the standard prescribed by G. L. c. 278, § 33E, we consider challenges to the charge not made by trial counsel. The judge's instruction on deliberate premeditation was not erroneous. His charge on reasonable doubt would have benefited from close adherence to the *Webster* charge (see *Commonwealth* v. *Beverly*, 389 Mass. 866, 870 [1983]), but taken as a whole the charge does not call for relief under § 33E. Reading the reasonable doubt charge as a whole and recognizing certain statements standing alone are troublesome (assuming the transcript is accurate), we conclude that the judge adequately advised the jury on the subject.

In introducing an otherwise adequate charge on consciousness of guilt, the judge referred to evidence that the defendant may have fled and then added, "I urge that you consider such flight as a consciousness which is guilt." If the judge did make this grammatically awkward statement as it appears in the transcript, it has to be tested against the charge as a whole and the jury instruction that this court requires on consciousness of guilt. *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). Considering the balance of the judge's charge on this issue, which is set forth in the margin,[2] it is clear that he did not lead

---

[2] "Flight, or the concealment by a person after a crime has been committed, or after he has been accused of a crime, may be motivated by a variety of factors which are fully consistent with innocent [*sic*]. It does not create a presumption of guilt, nor does the person's flight or concealment necessarily reflect feelings of guilt.

"Moreover, since innocent persons sometimes have feelings of guilt, such feelings do not necessarily reflect actual guilt, you may consider flight or concealment as one circumstance tending to show guilt, and while you may also consider feelings of guilt as evidence tending to show actual guilt, you are not required to do so.

"You should consider and weigh evidence of flight, or evidence of concealment in connection with all other evidence in the case and then give it

the jury into believing that they must treat the defendant's departure from Boston as consciousness of guilt.

5. We see no basis for granting relief under G. L. c. 278, § 33E.

*Judgment affirmed.*

such weight, some, much, or none, as you, in your own judgment deem it is fairly entitled to receive."