Dennis TORPEY, et al., Plaintiffs,

v.

INTERSTATE EQUIPMENT LEASING CORPORATION, INC., Third-Party Plaintiff, Appellant,

v.

GEORGE A. CALDWELL, CO., INC., Third-Party Defendant, Appellee.

No. 84–1919.

United States Court of Appeals, First Circuit.

Heard April 1, 1985.

Decided April 22, 1985.

Stephen M.A. Woodworth, Boston, Mass., with whom Francis J. Lynch, III, and Francis J. Lynch, J.D., P.C., Brockton, Mass., were on brief, for Interstate Equipment Leasing Co., Inc.

Gerald J. Caruso, Boston, Mass., with whom Cuddy, Lynch, Sikora & Cunningham, Boston, Mass., Paul F. Wynn, Marylin A. Beck, and Wynn & Wynn, Taunton, Mass., were on brief, for George A. Caldwell Co., Inc.

Before COFFIN, Circuit Judge, ALDRICH and ROSENN *, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is an appeal from the granting of a motion for summary judgment by a third party defendant. We reverse.

Dennis Torpey, an employee of appellee George A. Caldwell Co., Inc., was injured in the course of his employment because of an allegedly defective "air bag" supplied to it by appellant Interstate Equipment Leasing Co. Caldwell had acquired the bag under the following circumstances. Not having any, but needing one for a brief interval, Lash, president of Caldwell, testified by deposition that he inquired of a customer,

* Of the Third Circuit, sitting by designation.

Seaward Construction Co., if it had one to lend. Seaward said that its subsidiary, Interstate, would have one available to rent, but the terms of the lease or the rental were not discussed.

Lash sent a blue collar worker, Palombo, with the company truck, to pick up the bag. On delivery, Palombo signed what he described in his deposition as a rental slip, receiving a copy, which he gave to Lash. Lash testified he did not read it, but put it on his desk, "saving it to go back with the bag had it went back."

Following the accident allegedly caused by the air bag, Torpey sued Interstate, and others. Interstate filed a third party complaint against Caldwell on the basis of an indemnity agreement printed on the back of the paper Palombo had signed. The district court granted Caldwell's motion for summary judgment, stating that as matter of law Palombo had no authority to enter into an indemnity agreement. With respect to Interstate's claim that Lash ratified the, unauthorized, agreement, the court stated,

> "Interstate's contention that Caldwell ratified the agreement because Lash received the form, placed it on his desk, and took no action, ignores the settled law that a party alleged to have ratified an agreement must have knowledge of all material facts. *Perkins v. Rich*, 11 Mass.App.Ct. 317, 415 N.E.2d 895 (1981), *aff'd*, 385 Mass. 1001, 429 N.E.2d 1135 (1982). There is no evidence that anyone at Caldwell knew of the indemnity provision contained on the form."

We pass the question of the court's ruling as to Palombo's lack of actual or apparent authority, it being possibly correct, and, in any event, is inconsequential in view of our ruling on the issue of ratification to which we now turn.

The document in question was a printed form on a piece of paper 8″ × 10″. At the top of what was apparently the front page there appeared,

> "Subject to prices, terms and conditions set forth on the front and reverse side of this agreement."

At the bottom of the page appeared the following.

Accepted _____ 11/18/79 _____ 19__
Purchaser/Lessee _____
By _____ s/J Palombo _____

"The Customer hereby acknowledges receipt of an exact copy of this order, and acknowledges that both sides have been read and that all conditions, stipulations and provisions applicable to this transaction on both sides of this order are hereby agreed to, that no verbal agreements are binding and that this order is not subject to cancellation."

On the reverse were a number of printed paragraphs, each introduced with a descriptive word in capital letters. The one presently at issue read,

> LIABILITY: Lessee covenants and agrees to keep the Lessor harmless and free from any and all liability arising out of the use, maintenance and/or delivery of said equipment, and further covenants and agrees to pay Lessor in full for any and all damages caused to, or suffered by, said equipment, from time of departure from Lessor's warehouse to time of return to Lessor's warehouse. The liability assured by this clause should be insured and the Lessee agrees to furnish the Lessor with a Certificate of Insurance evidencing such insurance.

We hold it error to have granted summary judgment. While Lash's final quoted remark suggests he thought it a release, in saying there was "no evidence that anyone at Caldwell knew of the indemnity provisions contained on the form," the court gave insufficient weight to the *Perkins* court's statement that one cannot escape being charged with ratification by "purposefully shut[ting] his eyes to means of information within his own possession and control." 415 N.E.2d at 898. On Lash's deposition he knew this was a rental, not a mere bailment. A rental could be expected to have terms. The most cursory inspection of the paper Interstate tendered would have revealed that there were terms, and that Palombo had signed an acceptance.

The Massachusetts case cited by Caldwell, *Johnson v. New York, New Haven & Hartford R.R.*, 217 Mass. 203, 104 N.E. 445 (1914), held that it could be found that the principal, by retention, ratified the bills of lading signed by his agent, and hence was bound by a provision limiting liability. The court said, at 208, 104 N.E. 445,

> "There mere fact that he was willing to assent to the terms of the bills of lading without reading them cannot deprive the defendant of the benefit of the stipulation inserted therein for its protection."

It is true that the *Johnson* court also said, "The stipulation in question was one he had reason to expect." We do not, however, believe this to be a sine qua non. Even if Lash may not have expected an indemnity agreement, he could be found to know that this was more than a receipt that was signed by his agent, and that business sense, as well as his eyesight, told him there were many provisions and conditions. Absent some excuse, not only must one read what one signs, *e.g. Farrell v. Chandler & Williams, Inc.*, 252 Mass. 341, 344–45, 147 N.E. 822 (1925); *Lee v. Allied Sports Associates, Inc.*, 349 Mass. 544, 549–50, 209 N.E.2d 329 (1965), it is at least a jury question whether one should examine a document supplied in connection with a business transaction. *Johnson v. New York, New Haven, & Hartford R.R.*, ante.

The answer may depend on the extent the recipient was put on notice. *See Sandler v. Commonwealth Station Co.*, 307 Mass. 470, 472, 30 N.E.2d 389 (1940). In *Kidder v. Greenman*, 283 Mass. 601, 614–16, 187 N.E. 42 (1933), the recipient was excused because the paper, enclosed in an envelope, was other than what it was represented to be. There was no conceivable misrepresentation here. Lash knew he was renting the bag, knew that the terms had not been discussed, and were therefore open, and could see that Palombo, on his behalf, had signed an extensive paper. If he chose to "shut his eyes to [what was]

within his own possession and control," that should be Lash's loss; by his silence, and acceptance of the article, a jury could find he manifested the company's assent.

We cannot leave this case without observing that appellant's counsel failed seriously in his duty to a busy trial, and appellate, court, and to his clients, by not noting manifestly material evidence,[1] and citing only the *Johnson* case, that, standing alone, the district court had found not controlling.

Reversed. No costs.

---

1. The quoted language at the outset of the agreement was not reproduced in appellant's brief, nor legible in the defectively copied exhibit in its appendix, sending us back to Caldwell's trial brief in opposition to Interstate's motion for summary judgment for a legible copy. Of course it should have been in Interstate's brief.