PURITAN MEDICAL CENTER, INC. vs. EDWARD L. CASHMAN,
JR., & another.[1]

Essex. April 9, 1992. - July 20, 1992.

Present: WILKINS, ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Judgment notwithstanding verdict. *Landlord and Tenant*,
Rent. *Corporation*, Officers and agents, Close corporation, Corporate
opportunity. *Agency*, Ratification. *Contract*, Ratification, Lease of real
estate. *Limitations, Statute of. Fiduciary. Consumer Protection Act*,
Availability of remedy.

In a civil action the evidence was sufficient for the jury to have found only
one of the two defendants liable for charging the plaintiff excessive
rent, and the other defendant's motion for judgment notwithstanding
the verdict should have been allowed. [171]

In a civil action in which the defendant was alleged to have charged exces-
sive rent to a corporation of which the defendant was treasurer, the
judge properly refused to instruct that the corporation's directors could
have ratified the excessive payments by their failure to supervise the
corporation's financial matters. [172-174]

The evidence in a civil action supported the jury's verdict that the defend-
ant lessor charged the plaintiff, a corporation of which he was trea-
surer, excessive rent. [174-175]

The statute of limitations under G. L. c. 260, § 2, on a claim of excessive
rent was tolled under G. L. c. 260, § 12, where the defendant lessor
breached a fiduciary duty of full disclosure to the plaintiff corporation
of which he was treasurer. [175-177]

A lessor's nonrenewal of a lease to a corporation of which he was a direc-
tor and repossession of the premises did not constitute a misappropria-
tion of a corporate opportunity, where the lessor's property interest pre-
dated his tenure with the corporation; moreover, where the corporation
was unable to avail itself of the lease due to the nonrenewal, the direc-
tor was free to take advantage of it. [177-178]

In the circumstances of a civil action in which a commercial lease transac-
tion was private and not arm's length, i.e., the landlord was the trea-
surer of the corporate tenant, G. L. c. 93A, § 11, did not provide a

---

[1]Carol Patricia Cashman.

basis for a claim that essentially alleged a breach of fiduciary duty on the part of the landlord. [178-180]

The evidence in a claim for damages on account of a tenant's holdover after the expiration of its lease was sufficient to warrant entry of judgment for unpaid rent for the term of the holdover. [180-181]

CIVIL ACTION commenced in the Superior Court Department on December 19, 1986.

The case was tried before *Peter F. Brady*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Mitchell J. Sikora, Jr.* (*Ann Ryan-Small* with him) for the defendants.

*Alan K. Posner* (*Mark W. Corner* with him) for the plaintiff.

ABRAMS, J. A Superior Court jury determined that the defendants, Edward L. Cashman, Jr., and Carol Patricia (Patricia) Cashman, his sister, charged excessive rent for office space which they leased to the plaintiff corporation, Puritan Medical Center, Inc. (Puritan). Further, the jury concluded that Edward, one of Puritan's directors, had misappropriated a corporate opportunity by refusing to renew Puritan's lease. The jury returned a verdict of $505,100 for Puritan.[2] In addition, the jury awarded the defendants $5,000 on their counterclaim alleging damages arising from Puritan's holdover after the expiration of its lease. However, the judge entered judgment notwithstanding the verdict on the counterclaim. The judge determined that the defendants' conduct in "locking-out" Puritan after the expiration of its lease term had been wilfully and knowingly unfair and deceptive within the meaning of G. L. c. 93A, § 11 (1990 ed.), and doubled Puritan's damages. He also allowed Puritan's motions for $12,000 in costs and $141,000 in attorneys' fees. Judgments were entered accordingly. The defendants appeal. We al-

---

[2]The sum of $132,000 was entered against Edward alone on the misappropriation of a corporate opportunity claim; $373,100 was entered against both Edward and Patricia on the excessive rent claim.

lowed the defendants' application for direct appellate review. We reverse the judgment against Patricia on the excess rent claim. We affirm the verdict of $373,100 entered against Edward on the same claim. We reverse the judgment on misappropriation of a corporate opportunity. We also reverse the judgment entered pursuant to G. L. c. 93A (1990 ed.). We reinstate that portion of the jury's verdict entered on the defendants' counterclaim that represents recovery for rent owed. We affirm the judgment notwithstanding the verdict as to the remaining portion of that award.

*Facts.* Edward began his private medical practice in 1954, establishing his office in his parents' house at 96 Puritan Road, Swampscott. Shortly thereafter, he formed a partnership with another doctor, William Nash. During the 1960's, they hired two more physicians, and in 1970, the four formed the plaintiff corporation, Puritan. Each became a shareholder, director and officer of Puritan. Edward became and remained treasurer until he suffered a stroke in 1986. During the 1970's and 1980's, Puritan hired additional physicians, who also eventually became shareholders, directors and officers. By the time of this litigation, Puritan had eight principals, including Edward.

Puritan continued to operate out of the premises at 96 Puritan Road, owned by the defendants' parents, who also owned a building at 96A Puritan Road and several adjacent lots. In 1976, the defendants inherited all these properties. Shortly thereafter, Puritan expanded its office space to include a portion of the premises at 96A Puritan Road.

The minutes of a December 20, 1976, board of directors meeting state that "[i]t was agreed that a lease between Edward . . . and . . . Puritan . . . will be signed by the Corporation and/or its representative, William C. Nash, M.D., in the near future. The terms of the lease are to be unchanged for the next five years with a slight cost of living escalation for the following five years. When the lease is available, it will be signed." Thereafter, Nash, as Puritan's then-president, executed a lease on behalf of Puritan for the office and parking space then in use. Edward executed the lease on behalf of

himself and Patricia as owners. The term of the lease was ten years, from January 1, 1977, through December 31, 1986. The lease provided for an annual rent during the first five years of $24,408 for the office space and $6,000 for the parking space, assumption by Puritan of any real estate tax increases, and, beginning in the sixth year, annual rent increases tied to increases in the Federal consumer price index since the commencement of the lease. Edward, as treasurer of Puritan, wrote out the monthly rent checks payable to himself.

Puritan adduced evidence at trial that Edward had overcharged Puritan over the lease period by more than $450,000. Puritan claims that it discovered the rent overcharges for the first time in March, 1986, when, while Edward was recovering from a stroke, Doctors Casale and Calamita, Puritan's vice president and president, respectively, reviewed the lease and rent payment records. Puritan's principals claim that they were unaware of the existence and content of the lease until after Edward's stroke. Edward testified that he "forgot" about the lease, and had charged Puritan what he thought was "fair."

After discovering the overcharges, the other Puritan principals voted to remove Edward as treasurer and to relieve him of all his medical and business duties at Puritan. Although they notified Edward that they would be purchasing his shares in Puritan pursuant to their redemption agreement, they had not done so by the time of trial.

By letter dated November 12, 1986, Edward served Puritan with a notice of nonrenewal of the lease and notice to quit by December 31, 1986. Puritan commenced this action on December 19, 1986. On December 26, 1986, Puritan obtained a preliminary injunction enjoining Edward from exercising any managerial functions at Puritan and from interfering with Puritan's lawful use of the leased premises. On January 1, 1987, the date the lease expired, Puritan delivered a check to Edward in the amount of $7,500 for one

month's rent.[3] Without warning, during the early morning hours of January 14, purporting to act under a "reentry provision" in the lease, Edward retook physical possession of the premises. He moved out Puritan's records and property, changed the locks, and barricaded the entrance to the driveway. Puritan relocated temporarily to a hospital, and then to office space in Salem. The defendants' counsel rejected the $7,500 rent check under cover letter of January 15, 1987. Edward resumed his medical practice part-time at the 96 Puritan Road premises.

1. *Patricia Cashman's liability.* The defendants argue that the evidence was insufficient to permit the verdict that Patricia was jointly liable with Edward on the excessive rent claim. The defendants' counsel moved for a directed verdict on Patricia's behalf, and, after the jury returned its verdict, moved for a new trial or entry of judgment notwithstanding the verdict. See *Martin* v. *Hall*, 369 Mass. 882, 885 (1976). The judge denied the motions. The standard of review is whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989), quoting *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). We conclude that no such reasonable inference could be drawn in favor of the plaintiff.[4] Therefore, we reverse the denial of the motion for judgment notwithstanding the verdict.[5]

---

[3]In March of 1986, two of the Puritan principals complained to Patricia that Edward had charged excessive rents. Patricia proposed that Puritan pay "whatever they felt was fair until such time as [Edward's] health returned." Puritan assented. The $7,500 tendered by Puritan thus represents their assessment of fair rental value at the time.

[4]The lease, which was admitted in evidence, indicates that Patricia was not a signatory to the lease. There was no evidence to indicate that Patricia either charged or collected the rent throughout the life of the lease; the evidence indicated that only Edward performed these functions. There was no evidence that Patricia owed a fiduciary duty to the corporation.

[5]Puritan claims that we cannot consider the fact that Patricia did not sign the lease, because the defendants did not state that fact as a basis for

2. *Excessive rent claim against Edward.* A. *Ratification of the rent charges.* Edward argues the judge improperly refused to instruct the jury that Puritan's directors could have ratified the excessive rent payments by their protracted failure to supervise the corporation's financial matters. This argument is without merit. While it is true that officers and directors have a duty of reasonable supervision, see *Perkins v. Rich*, 11 Mass. App. Ct. 317, 322-323 (1981), and cases cited, this duty is for the benefit of the corporation, not the wrongdoer. The judge's instructions properly reflected the fact that there may be no ratification of self-dealing without full disclosure.[6] See *Durfee v. Durfee & Canning, Inc.*, 323 Mass. 187, 203 (1948), quoting *Earll v. Picken*, 113 F.2d 150, 158 (D.C. Cir. 1940) (Cestui que trust can ratify breach of trust only if apprised of all material facts as well as their legal effect. "No half-hearted disclosure or partial discovery is sufficient in either respect. The trustee's duty of disclosure is not discharged by leaving the cestui to draw doubtful inferences, conclusions and suspicions . . ."); *Winchell v. Plywood Corp.*, 324 Mass. 171, 176 (1949), and cases cited ("contracts between a corporation and one of its officers or directors are valid if, with full knowledge of all the facts, they are assented to by all the officers and the stockholders").

The cases in which courts imply ratification, unlike this case, involve third-party, arm's-length transactions from

---

their motion for directed verdict. That argument is without merit. The issue is the sufficiency of the evidence against Patricia, and the fact she did not sign the lease is a factor to be considered in determining whether Puritan met its burden of establishing that Patricia should be held liable as a principal on the excessive rent claim.

[6]The judge instructed the jury: "If you find that [Edward] failed and breached his fiduciary duty to the corporation by failing to disclose or make available the records of the corporation to the other shareholders, or to provide the other shareholders with relevant information relating to rent payments made by [Edward] on behalf of Puritan, then you cannot find that the other shareholders acquiesced in those corporate decisions made by [Edward], unless you find that the other shareholders had full knowledge of all the essential facts relating to such decisions."

which the corporation received a benefit, and directors who, at minimum, had "knowledge of such facts or circumstances as would put a reasonable person on inquiry and which would lead to full discovery." *Ingalls Iron Works Co.* v. *Ingalls*, 177 F. Supp. 151, 162 (N.D. Ala. 1959), aff'd, 280 F.2d 423 (5th Cir. 1960) (directors held to have ratified settlement contract where they had constructive knowledge and their delay in approving contract benefited corporation). See, e.g., *Irving Tanning Co.* v. *Shir*, 295 Mass. 380, 384 (1936) (ratification of agent's unauthorized contracts will be inferred where, after knowledge, principal made no effort to repudiate them); *Perkins, supra* at 323 (where church committee knew of "radical physical and structural changes to the church and its surroundings," and had been informed of church projects "through annual reports and publications," ratification of mortgage transactions is inferred by its failure to disavow them); *Torpey* v. *Interstate Equip. Leasing Co.*, 760 F.2d 364, 366 (1st Cir. 1985) (jury could find that where defendant was put on notice of indemnity agreement, he manifested company's assent by his silence and acceptance of the rental slip on back of which indemnity agreement was printed); *Baltimore & O. R. Co.* v. *Foar*, 84 F.2d 67, 72 (7th Cir. 1936) (directors found to have ratified contract where, if they did not have actual knowledge, ought to have known of lifetime contract offered to striking worker to induce him to return to work); *Ingalls Iron Works Co.* v. *Ingalls, supra.*

The facts of this case are more analogous to those in *Kidder* v. *Greenman*, 283 Mass. 601, 615-616 (1933), in which "[t]he [lessee] did not have actual knowledge of the contents of the completed lease and, though the means of information as to the contents thereof were within her possession and control, she did not wilfully or deliberately ignore the facts. . . . She had no reason to think that the [lessor's agent] had not completed the lease in the authorized manner and, therefore, no occasion to examine it . . . to see if he had done so. . . . In these circumstances the doctrine that a person who accepts an instrument — or takes title thereunder

— without reading it or otherwise informing himself of its contents is charged with knowledge of such contents . . . is not applicable." (Citations omitted.) Further, the lessee "accepted no benefit from the unauthorized act of the [agent]." *Id.* at 616. Consequently, in *Kidder*, we held that the lessee's "acceptance of the completed lease . . . did not amount to ratification of the unauthorized act of [the agent] in completing it." So, too, in this case, Puritan's directors' failure to supervise Puritan's business affairs in such a manner that they would have discovered the overcharges cannot amount to ratification. There was no error in the judge's instructions on this point.

Edward further argues that, even as instructed, the jurors could not have found that Edward "had accomplished a nine-year scheme of deception." We reject this argument as well. The evidence was sufficient to permit the jury to find that the other directors had not discovered, nor had Edward informed them of, the amount of rent which he was charging Puritan. Edward conceded that he did not discuss with the other directors what he thought would be a "fair" rent, did not inform them of the amount of "fair" rent being paid by Puritan, and did not distribute yearly financial reports. It was undisputed at trial that Edward was in charge of all the financial and administrative aspects of Puritan's operations. Other testimony which the jurors could have believed indicated that (1) Edward was the person who charged or collected the rent payments; (2) most of the critical information with regard to rent payments was kept under lock and key in Edward's office; (3) the accounting reviews were a mere compilation, which relied wholly on figures supplied to the accountants by Edward; (4) the accountants never provided lease or rent information to the other directors; (5) lease and rent issues were not discussed at directors' meetings; (6) the only financial data sent to the other doctors related to their own income, not to Puritan's expenses; and (7) the other directors viewed Edward as a trusted mentor to whom they deferred in business tasks while they focused their time and energy on the practice of medicine. The evidence, viewed in the

light most favorable to the plaintiff, supports the jury's verdict.

B. *Statute of limitations on claim of excessive rent.* The defendants argue that the judge wrongly refused to impose the six-year statute of limitations set out in G. L. c. 260, § 2 (1990 ed.),[7] on Puritan's claim of excessive rent. We conclude that the statute of limitations was tolled pursuant to G. L. c. 260, § 12 (1990 ed.), and therefore the judge did not err in refusing to impose a six-year statute of limitations.

There are two important exceptions to the general rule that "a cause of action in contract accrues at the time of the breach," *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 106 (1980), and cases cited. First, if the action is based on an "inherently unknowable" wrong, it does not accrue until the injured party knows or in the exercise of reasonable diligence should know the factual basis for the cause of action. See *Dinsky* v. *Framingham*, 386 Mass. 801, 803 (1982); *Friedman* v. *Jablonski*, 371 Mass. 482, 485 (1976); *Hendrickson* v. *Sears*, 365 Mass. 83, 91 (1974); *Frank Cooke, Inc., supra* at 106. Second, the statute of limitations may be tolled under G. L. c. 260, § 12, if the wrongdoer either "concealed the existence of a cause of action through some affirmative act done with intent to deceive" or breached a fiduciary duty of full disclosure. *Frank Cooke, Inc., supra* at 108, citing *Stetson* v. *French*, 321 Mass. 195, 198 (1947).[8] In this case, the statute of limitations was tolled pursuant to the latter provision.

"[B]ecause of the trust and confidence reposed in them by the other stockholders," stockholders in a close corporation are held to a "standard of fiduciary duty more exacting than

---

[7] General Laws c. 260, § 2 (1990 ed.), establishes a six-year statute of limitations for "[a]ctions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied . . . . ."

[8] General Laws c. 260, § 12 (1990 ed.), reads: "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

the traditional good faith and inherent fairness standard."
*Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367
Mass. 578, 595 (1975). Therefore, as a stockholder in Puri-
tan, a close corporation, Edward owed his fellow sharehold-
ers a duty of the "utmost good faith and loyalty." *Id.* at 593,
quoting *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952). Where,
as in this case, "a fiduciary relationship exists between plain-
tiff and defendant . . . mere failure to reveal information may
be sufficient to constitute fraudulent conduct for the purposes
of [G. L. c. 260, ]§ 12." *Maggio* v. *Gerard Freezer & Ice
Co.*, 824 F.2d 123, 130 (1st Cir. 1987), citing *Jenkins* v. *Jen-
kins*, 15 Mass. App. Ct. 934, 935 (1983), and *Burns* v. *Mas-
sachusetts Inst. of Technology*, 394 F.2d 416, 419 (1st Cir.
1968). See *Jamesbury Corp.* v. *Worcester Valve Co.*, 443
F.2d 205, 209 (1st Cir. 1971) ("silence can be fraudulent
concealment by a person, such as a fiduciary, who has a duty
to disclose"); *Samia* v. *Central Oil Co. of Worcester*, 339
Mass. 101, 113 (1959) ("mere failure to reveal may be
fraudulent where there is a duty to reveal"), quoting *Stetson*
v. *French*, 321 Mass. 195, 199 (1947). Cf. *Norwood Trust
Co.* v. *Twenty-Four Fed. St. Corp.*, 295 Mass. 234, 237
(1936) (where no fiduciary duty exists, mere failure of a
wrongdoer to disclose wrongdoing is not fraudulent conceal-
ment of action within meaning of G. L. c. 260, § 12), and
cases cited.

The jury's verdict in favor of Puritan on the excess rent
claim indicates that they found, at minimum, that Edward
"fail[ed] to disclose or make available" information concern-
ing the rent payments. See note 6, *supra*. Viewing the evi-
dence in the light most favorable to the plaintiffs, we con-
clude that the jury could have found that the other
shareholders had neither knowledge of the rent payments nor
the means of acquiring such knowledge. In any event, for the
statute of limitations to be tolled pursuant to G. L. c. 260,
§ 12, it is sufficient that Edward, in breach of his "strict
good faith" fiduciary duty as a shareholder in a close corpo-

ration, *Donahue, supra* at 593, did not disclose the amount of the rent payments to the other shareholders.[9]

3. *Corporate opportunity.* Edward argues that his nonrenewal of Puritan's lease did not constitute a misappropriation of a corporate opportunity because, among other things, the "opportunity" was a preexisting property interest of Edward. We agree, and reverse the judgment for Puritan on its misappropriation of a corporate opportunity claim.[10]

The determination whether a corporate officer has breached his fiduciary duty by acquiring or diverting a corporate business opportunity for his personal profit "rests fundamentally on the unfairness in the particular circumstances." *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187, 199 (1948). One factor the court will look to is whether "the opportunity came in the first place only because of [the defendants'] connection with the corporation." *Weismann* v. *Snyder*, 338 Mass. 502, 506 (1959). Here, where Edward's property interest in the leased premises predated Puritan's incorporation, his "opportunity" to renew the lease for his own benefit was completely independent of his role as a director of the corporation. The cases cited by Puritan are

---

[9]In *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 106 (1980), the Appeals Court wrote that "the statute of limitations may be tolled under G. L. c. 260, § 12, if the wrongdoer, either through actual fraud or in breach of a fiduciary duty of full disclosure, keeps from the person injured knowledge of the facts giving rise to a cause of action *and* the means of acquiring knowledge of such facts" (emphasis added). This is a correct statement of the law only insofar as it applies to cases of actual fraud. Three of the four cases cited by the Appeals Court in support of the language quoted above, *Nudd* v. *Hamblin*, 8 Allen 130, 133-134 (1864); *Brackett* v. *Perry*, 201 Mass. 502, 505 (1909); and *Tracerlab, Inc.* v. *Industrial Nucleonics Corp.*, 313 F.2d 97, 101-102 (1st Cir. 1963), involve actual fraud, as opposed to a violation of a fiduciary duty to disclose. In the fourth case, *Stetson* v. *French*, 321 Mass. 195, 199 (1947), the court tolled the statute of limitations without inquiring into whether the defendant had prevented the plaintiffs from discovering the facts, because, like this case, it involved a defendant who "occupied toward [the plaintiffs] a position of trust and confidence . . . [and therefore] would . . . be subject at all times to the duty of full disclosure." *Id.* at 199.

[10]We therefore need not reach Edward's related contention that Puritan failed to introduce any evidence to support the jury award on this claim.

therefore inapposite. In none of these cases did the defendant's interest in the land predate his tenure with the corporation; rather, the "opportunity [was] brought to him as an incident of management." *Meinhard* v. *Salmon*, 249 N.Y. 458, 468 (1928). See, e.g., *Lurie* v. *Pinanski*, 215 Mass. 229 (1913); *Leach* v. *Leach*, 18 Pick. 68 (1836); *Ferry* v. *McNeil*, 214 Cal. App. 2d 411 (1963); *Ladas* v. *Psiharis*, 241 Mich. 101 (1927).

Further, Edward is absolved of liability based on the principle that "[w]hen a corporation is unable to avail itself of an opportunity, its employee, officer or director is free to exploit it," *Energy Resources Corp., Inc.* v. *Porter*, 14 Mass. App. Ct. 296, 300 (1982), citing *Miller* v. *Miller*, 301 Minn. 207, 225 (1974). Common forms of this defense include assertions that the corporation was financially unable to exploit the opportunity, see, e.g., *Durfee, supra* at 202-203; that the party offering the opportunity refused to deal with the corporation, see, e.g., *Energy Resources, supra* at 300; and that "the corporation sought without success to obtain [the opportunity]." *Northwestern Terra Cotta Corp.* v. *Wilson*, 74 Ill. App. 2d 38, 47 (1966). This case is analogous to the latter two examples. Here, ironically, the essence of Puritan's misappropriation claim — that Edward refused to renew the lease (or, put differently, that Puritan sought without success to renew the lease) — serves as Edward's defense to that very claim. In the circumstances of this case, where Edward was both the offeror and offeree, and where the opportunity came to him independently of any connection with Puritan, Edward was not obligated to prefer Puritan's interest to his own. Cf. *Bauman* v. *Hayes*, 379 So. 2d 1251, 1254 (Ala. 1980) (refusal of directors in land development corporation to convey land to corporation does not constitute misappropriation of corporate opportunity where defendant-directors merely retained land which was always theirs and never contracted to convey unconditionally to corporation).

4. *Liability under G. L. c. 93A.* In a posttrial memorandum of decision, the judge ruled that the defendants had wilfully and knowingly committed unfair and deceptive acts

in violation of G. L. c. 93A in locking out Puritan employees without a court order. The judge based this conclusion on his finding that the defendants had (1) leased the premises to Puritan; (2) begun a legal action for possession; and (3) at the time of the lockout, neither returned nor cashed the rent check tendered by Puritan. As a result, Puritan was awarded twice the damages found by the jury against each of the defendants, as well as attorneys' fees and costs.

The defendants argue that they are not liable to Puritan under G. L. c. 93A, because, among other reasons, the parties were acting as fiduciary participants in a closely held corporation rather than as separate entities in a public market setting. We agree. Accordingly, we reverse the judgment for Puritan on its G. L. c. 93A claim as well as the costs and attorneys' fees also awarded pursuant to G. L. c. 93.[11]

"[T]he unfair or deceptive acts or practices prohibited [under G. L. c. 93A] are those that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company." *Manning v. Zuckerman*, 388 Mass. 8, 12 (1983). See *Riseman v. Orion Research, Inc.*, 394 Mass. 311, 313-314 (1985) (c. 93A not intended to redress wrongs asserted by stockholder against a corporation in the internal governance of the corporation); *Newton v. Moffie*, 13 Mass. App. Ct. 462, 467 (1982) (G. L. c. 93A intended to apply only to dealings between legally separate "persons" engaged in arm's-length transactions). "The transactions at issue here were principally private in nature and thus do not fall within the purview of G. L. c. 93A." *Zimmerman v. Bogoff*, 402 Mass. 650, 662, (1988). Further, "the aggrieved party has available an alternative avenue of relief in the form of a suit for breach of fiduciary

---

[11]In view of our conclusion, we need not address the defendants' additional arguments that (1) their actions did not constitute an unfair or deceptive act or practice; (2) the judge's assessment of G. L. c. 93A damages is insupportable because Puritan failed to introduce any evidence of damages resulting from the eviction; and (3) the judge's award of G. L. c. 93A attorney's fees and costs was unsubstantiated and constituted an abuse of discretion.

duty." *Id.* at 663, citing *Riseman* v. *Orion Research, Inc.,* *supra.*

"[I]f [the defendants] committed any unfair or deceptive acts, they necessarily occurred in the context of the parties' [shareholder] relationship . . . or arose out of that relationship . . . and not in an arm's-length commercial transaction between distinct business entities," *Manning, supra* at 11; therefore, G. L. c. 93A, § 11, does not apply. Here, the commercial transaction was anything but arm's-length. The gravamen of Puritan's complaint is self-dealing: Edward as company treasurer paid excessive rent to himself as landlord. Although Puritan attempts to cast its G. L. c. 93A complaint solely as one against a commercial landlord, "for charging and accepting rent greatly in excess of that permitted both under its Lease, and at fair rental value rates," it is clear that, but for the fact that Edward was also the payor, the payee could not have charged and accepted excess rent, and none of the ensuing conflict, including the lockout, would have occurred.

5. *The defendants' counterclaims.* At the close of the evidence, Puritan moved for a directed verdict on the defendants' counterclaim for expenses caused by Puritan's holdover, on the ground that no evidence of damage from Puritan's continued occupancy had been presented. After the jury returned a $5,000 verdict in favor of the defendants on their counterclaim, the judge entered judgment notwithstanding the verdict on the counterclaim. The defendants argue that this was improper. We conclude that the evidence was sufficient to support only that portion of the jury's award that represented the defendants' claim for unpaid rent.

The jury had evidence that Puritan held over fourteen days into January, and that Puritan had tendered a rental check for $7,500 for that month. Using Puritan's proffered $7,500 January rental check as a yardstick, the jury could calculate Puritan's pro rata rent for the fourteen days.

The other evidence regarding expenses incurred by the defendants as a result of the eviction was insufficient to support the remaining portion of the jury's award. Patricia testified

that she and Edward paid to have damage to the premises repaired and professional movers move out Puritan's equipment. She never testified to her familiarity with the type of repairs or the reasonableness of the costs. Nor did she testify that the professional movers had been paid by the defendants. "When . . . damages are sought they must be proved and not left, as here, to speculation." *Snelling & Snelling of Mass., Inc.* v. *Wall*, 345 Mass. 634, 636 (1963). *Dalton* v. *Demos Bros. Gen. Contractors, Inc.*, 334 Mass. 377, 378 (1956) ("damages must be reasonably ascertainable from the evidence"), and cases cited.[12] Accordingly, we reinstate only that portion of the jury's verdict on the defendants' counterclaim which was "reasonably ascertainable from the evidence." *Id.*

In sum, we (1) reverse the judgment against Patricia; (2) affirm the judgment against Edward on the claim of excessive rent; (3) reverse the judgment on the misappropriation of a corporate opportunity and the c. 93A claims; (4) reinstate that portion of the jury's verdict that represents the defendants' counterclaim for unpaid rent; and (5) affirm the judgment notwithstanding the verdict as to the remaining portion of the defendants' counterclaim. We remand to the Superior Court for entry of a judgment consistent with this opinion.

<em>So ordered.</em>

---

[12]Patricia attempted to testify to the various expenses for the work the defendants undertook in connection with Puritan's eviction. Puritan objected to this testimony and the judge sustained the objection. The defendants do not argue on appeal that the objection was erroneously sustained; therefore, we need not reach this issue. Rather, the defendants argue only that the evidence was sufficient to support the entire $5,000 verdict on their counterclaim.