**INN FOODS, INC., d/b/a U.S. Food Service, Plaintiff, Appellant,**

v.

**EQUITABLE CO–OPERATIVE BANK, Defendant, Appellee.**

No. 94–1670.

United States Court of Appeals, First Circuit.

Heard Dec. 8, 1994.

Decided Feb. 1, 1995.

Peter L. Koff with whom Robert J. Diettrich and Davis, Malm & D'Agostine, P.C., Boston, MA, were on brief, for appellant.

Antoinette D. Hubbard with whom Judith Gail Dein and Warner & Stackpole, Boston, MA, were on brief, for appellees.

Before TORRUELLA, Chief Judge, CYR and STAHL, Circuit Judges.

STAHL, Circuit Judge.

Plaintiff-appellant Inn Foods, Inc. ("Inn Foods"), secured a default judgment in the amount of $1,084,524.13 against Atlantic Brands, Inc. ("Atlantic"). During discovery to determine the availability of assets to satisfy the judgment, Inn Foods learned that Atlantic's president, Paget T. Hodge ("Hodge"), had indorsed a $523,744.18 United States Treasury check ("Treasury check"), payable to Atlantic, for deposit into his personal account at defendant-appellee Equitable Co-operative Bank ("Equitable"). In the present case, Inn Foods seeks to reach and apply a never-asserted cause of action for conversion of the Treasury check that it contends Atlantic has against Equitable. Atlantic has never filed such a claim nor has it ever indicated an intent to do so. Following cross-motions for summary judgment, the district court entered judgment for Equitable. We affirm.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

In the early 1980's, Hodge formed Atlantic, a closely held corporation based in Boston, Massachusetts, with Hodge serving as Atlantic's president. The primary business of Atlantic was food distribution. In 1988, Atlantic obtained from the Department of Defense Personnel Support Center ("DOD") a contract to supply frozen vegetables to DOD. Atlantic subcontracted some of its supply obligations to Inn Foods, a California-based wholesale food supplier, which agreed to provide a portion of the contracted-for frozen vegetables to DOD, thus partially fulfilling Atlantic's contract obligations with DOD. In November of 1988, Atlantic breached its contract with Inn Foods by failing to pay Inn Foods for the vegetables it had delivered to DOD. Inn Foods then sued Atlantic for the amount due and, in March of 1989, obtained a default judgment.

In their discovery efforts seeking assets to satisfy the judgment, Inn Foods learned the following. Hodge maintained a personal checking account at Equitable, where he had been a regular customer for more than ten years. Equitable officials knew that Hodge was president of Atlantic. On December 8, 1988, Hodge appeared at Equitable's office in Lynn, Massachusetts, where he indorsed to himself the Treasury check which was in partial payment to Atlantic for the vegetables actually supplied to DOD by Inn Foods. Equitable accepted the check for deposit into Hodge's personal account. Equitable then issued to Hodge a bank check payable to the Bank of New England in the amount of $450,000. Equitable debited Hodge's account accordingly. The next day, Equitable took the Treasury check directly to the Federal Reserve Bank of Boston, which credited Equitable's account. Eventually, Hodge withdrew from his personal account the balance of the funds obtained from the Treasury check.

By deposition, Equitable's senior vice president and treasurer, Arthur E. Horgan, testified that he was "uncomfortable" about the Hodge transaction in light of both the sum involved and the fact that Hodge had deposited the Treasury check into his personal account. As a result, Horgan "contacted counsel and they suggested we get something, a certificate of vote from the company indicating that ... Hodge has authority to transact business." Equitable's president, James G. Perkins, then called Hodge and requested that Atlantic provide a written corporate resolution stating that Hodge had au-

thority to indorse the Treasury check and that he was authorized to deposit the check into his personal account. Thereafter, Perkins received a resolution ("resolution"), dated December 17, 1988, and signed by Wallace Johnson, the corporation's secretary, which stated that the Board of Directors of Atlantic had unanimously:

> VOTED: That, Paget Hodge, President of Atlantic Brands, Inc. is hereby authorized to endorse on behalf of the Corporation any checks to his order, said checks being drawn or endorsed payable to said Corporation, and deposit said checks to his personal account.

After Atlantic defaulted, Inn Foods brought the present action against Equitable and others [1] to satisfy its judgment. As alluded to above, Inn Foods' theory of recovery against Equitable has two principal elements. First, Inn Foods argues that Atlantic has a cause of action for conversion against Equitable under Mass.Gen.L. ch. 106, § 3–419(1)(c).[2] Second, as a judgment creditor, it seeks to reach and apply Atlantic's unfiled conversion claim.[3] As noted, Atlantic has never filed such a claim, nor has it ever indicated an intent to do so.[4] The parties entered cross-motions for summary judgment. After a hearing, the district court denied Inn Foods' motion and granted Equitable's. From the bench, the court ruled that "the [i]ndorsement was not a forgery and [Hodge] had apparent authority and indeed [Atlantic] ratified his authority." Alternatively, the court ruled that Inn Foods could not reach and apply Atlantic's putative cause of action. This appeal followed.

## II.

### DISCUSSION

Inn Foods now argues that: (1) Atlantic has a cause of action for conversion against Equitable because (a) Hodge had neither actual nor apparent authority to indorse the Treasury check and deposit it into his personal account, and (b) Atlantic did not ratify Hodge's actions; and (2) it may assert an action to reach and apply Atlantic's unfiled cause of action for conversion. Although the appeal raises a number of interesting issues, some of which involve apparently unsettled questions of Massachusetts law, we resolve the appeal by concluding that, as a matter of law, Atlantic ratified Hodge's indorsement. Before discussing ratification, we recite the standard of review.

### A. Standard of Review

Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Our review of an order granting summary judgment is de novo. See, e.g., Vasapolli v. Rostoff, 39 F.3d 27, 32 (1st Cir.1994). We review the record in the light most favorable to the nonmoving party, and we indulge all reasonable inferences in that party's favor. Id.

### B. Ratification

Inn Foods' conversion theory rests on the premise that Hodge was not authorized to indorse the Treasury check to himself for deposit into his personal account. Under the Code, conversion takes place when an instrument "is paid on a forged indorsement." § 3–419(1)(c). This section has generally been interpreted to permit actions for conversion where a negotiable instrument has been paid on either an "unauthorized" or a "forged" indorsement. D & G Equip. v.

---

1. Equitable is the only defendant that is a party to this appeal.

2. This is a diversity-based action and both parties agree that Massachusetts law applies. This case is, in part, governed by the Uniform Commercial Code ("the Code") as adopted by Massachusetts and appearing at Mass.Gen.L. ch. 106. References to this statute will be by section number only.

3. Mass.Gen.L. ch. 214, § 3(6) authorizes an action by creditors to reach and apply an unsatisfied debt.

4. From the record, it appears that Atlantic ceased to function as an ongoing enterprise before the default judgment occurred. As for Hodge, he was a named defendant below, but failed to answer. Service of process on Hodge was made at the Wormwood Scrubs prison in London, England.

*First Nat'l Bank of Greencastle,* 764 F.2d 950, 955 (3d Cir.1985) (collecting cases). Signatures on commercial instruments are "presumed to be genuine or authorized." § 3–307(1)(b).[5] Under the Code, "[a]ny unauthorized signature may be ratified" by the principal. § 3–404(2). We assume but do not decide that Inn Foods met its initial burden of establishing that Hodge's signature on the Treasury check was unauthorized when presented. Thus, we proceed directly to the question of whether Atlantic ratified Hodge's signature.

■■■ Unless they are displaced by a particular provision, general common law principles, including those of agency, supplement the Code. § 1–103; *see also Terry v. Kemper Ins. Co.,* 390 Mass. 450, 456 N.E.2d 465, 467 (1983) (Code does not displace settled principles of agency law). Under Massachusetts law, ratification of an agent's acts may be express or implied and, as a general proposition, the principal must have full knowledge of all material facts. *See, e.g., Puritan Medical Ctr. v. Cashman,* 413 Mass. 167, 596 N.E.2d 1004, 1008 (1992); *Perkins v. Rich,* 11 Mass.App.Ct. 317, 415 N.E.2d 895, 898 (1981), *aff'd,* 385 Mass. 1001, 429 N.E.2d 1135 (1982). Massachusetts courts, however, do not always require that the principal have actual knowledge. There may be ratification when the principal "purposely shut[s] his eyes to means of information within his own possession and control." *Torpey v. Interstate Equip. Leasing Corp.,* 760 F.2d 364, 365 (1st Cir.1985) (quotation omitted); *see also Puritan,* 596 N.E.2d at 1008 (ratification may be implied where corporation directors have "knowledge of such facts or circumstances as would put a reasonable person on inquiry

and which would lead to full discovery") (quotation omitted).

■■■ Inn Foods argues that because the record is devoid of any indication that Atlantic had full knowledge of the facts, no ratification occurred. We do not agree. We think the only reasonable conclusion to be drawn from the record is that Atlantic ratified the transaction with knowledge at least sufficient to satisfy the "deliberate ignorance" standard recited above. The language of the resolution itself speaks directly to the two critical elements of the Treasury check transaction. The resolution authorizes Hodge to both indorse checks on behalf of the corporation, and to deposit those checks into his personal account. Moreover, the resolution was dated nine days after Hodge presented the Treasury check to Equitable. At a minimum, the terms of the resolution as well as the surrounding circumstances should have alerted Atlantic's directors that "something was afoot," *Perkins,* 415 N.E.2d at 898 (quotation omitted), especially in light of the directors' duty to keep themselves informed of the corporation's affairs. *See, e.g., Puritan,* 596 N.E.2d at 1008;[6] *Perkins,* 415 N.E.2d at 898.

■■■ Inn Foods makes the additional argument that the resolution does not ratify the Treasury check transaction because its language is cast in prospective terms only. Even if we were to agree, Massachusetts law makes clear that ratification can be implied when a principal with knowledge makes no effort to repudiate a transaction.[7] *Irving Tanning Co. v. Shir,* 295 Mass. 380, 3 N.E.2d 841, 842 (1936); *see also* Restatement of Agency 2d § 94 ("An affirmance of an unauthorized transaction can be inferred from a

---

5. The presumption remains "unless and until evidence is introduced which would support a finding of its non-existence." § 1–201(31).

6. The *Puritan* court noted that the failure of directors to discharge their duty of supervision does not always lead to ratification. *Puritan,* 596 N.E.2d at 1008. In *Puritan,* a corporation's director sought to interpose ratification as a defense to self-dealing. The present case involves an entirely different set of circumstances as a third party, Equitable, sought assurances from Atlantic as to the authority of Hodge, an Atlantic agent. Under these facts, we think Atlantic

would be estopped from denying the applicability of the duty to supervise.

7. On this point, we disagree with Inn Foods' contention that *Puritan,* 596 N.E.2d at 1008, should be read as requiring that a benefit accrue to the principal from the disputed transaction before an implied ratification can be found. While benefits received are certainly strong evidence that the principal acquiesced in the agent's transaction, other Massachusetts cases make clear that ratification can take place in the absence of such a benefit. *See, e.g., Boice–Perrine Co. v. Kelley,* 243 Mass. 327, 137 N.E. 731 (1923).

failure to repudiate it."). The rationale for this rule is plain. When a principal fails to disavow promptly an act of his agent, such a failure both thwarts a damaged third party's ability to mitigate the effects of an unauthorized act and perpetuates an inference of authority reposed in the would-be agent. *See Boice–Perrine Co. v. Kelley,* 243 Mass. 327, 137 N.E. 731, 733 (1923). Again, we do not think there can be reasonable dispute that Atlantic had sufficient knowledge for ratification and, there is no indication in the record that Atlantic ever sought to repudiate this transaction.

In short, Atlantic had sufficient knowledge to ratify by either acting (as it purported to do in the resolution) or not acting (thereby acquiescing in the Treasury check transaction). Either route leads to the same conclusion: Atlantic ratified Hodge's indorsement and deposit. Because Hodge's signature was authorized, Atlantic has no conversion cause of action against Equitable and, thus, Inn Foods' claim must fail.

### III.

### CONCLUSION

For the reasons discussed above, the decision of the district court is

*Affirmed.   Costs to appellee.*