United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit

No. 94-1670

INN FOODS, INC.,
D/B/A U.S. FOOD SERVICE,

Plaintiff, Appellant,

v.

EQUITABLE CO-OPERATIVE BANK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Chief Judge,
Cyr and Stahl, Circuit Judges.

Peter L. Koff with whom Robert J. Diettrich and Davis, Malm &
D'Agostine, P.C. were on brief for appellant.
Antoinette D. Hubbard with whom Judith Gail Dein and Warner &
Stackpole were on brief for appellees.

February 1, 1995


STAHL, Circuit Judge. Plaintiff-appellant Inn STAHL, Circuit Judge.

Foods, Inc. ("Inn Foods"), secured a default judgment in the

amount of $1,084,524.13 against Atlantic Brands, Inc.

("Atlantic"). During discovery to determine the availability

of assets to satisfy the judgment, Inn Foods learned that

Atlantic's president, Paget T. Hodge ("Hodge"), had indorsed

a $523,744.18 United States Treasury check ("Treasury

check"), payable to Atlantic, for deposit into his personal

account at defendant-appellee Equitable Co-operative Bank

("Equitable"). In the present case, Inn Foods seeks to reach

and apply a never-asserted cause of action for conversion of

the Treasury check that it contends Atlantic has against

Equitable. Atlantic has never filed such a claim nor has it

ever indicated an intent to do so. Following cross-motions

for summary judgment, the district court entered judgment for

Equitable. We affirm.

I. I.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

In the early 1980's, Hodge formed Atlantic, a

closely held corporation based in Boston, Massachusetts, with

Hodge serving as Atlantic's president. The primary business

of Atlantic was food distribution. In 1988, Atlantic

obtained from the Department of Defense Personnel Support

Center ("DOD") a contract to supply frozen vegetables to DOD.

Atlantic subcontracted some of its supply obligations to Inn

-2- 2

Foods, a California-based wholesale food supplier, which

agreed to provide a portion of the contracted-for frozen

vegetables to DOD, thus partially fulfilling Atlantic's

contract obligations with DOD. In November of 1988, Atlantic

breached its contract with Inn Foods by failing to pay Inn

Foods for the vegetables it had delivered to DOD. Inn Foods

then sued Atlantic for the amount due and, in March of 1989,

obtained a default judgment.

In their discovery efforts seeking assets to

satisfy the judgment, Inn Foods learned the following. Hodge

maintained a personal checking account at Equitable, where he

had been a regular customer for more than ten years.

Equitable officials knew that Hodge was president of

Atlantic. On December 8, 1988, Hodge appeared at Equitable's

office in Lynn, Massachusetts, where he indorsed to himself

the Treasury check which was in partial payment to Atlantic

for the vegetables actually supplied to DOD by Inn Foods.

Equitable accepted the check for deposit into Hodge's

personal account. Equitable then issued to Hodge a bank

check payable to the Bank of New England in the amount of

$450,000. Equitable debited Hodge's account accordingly.

The next day, Equitable took the Treasury check directly to

the Federal Reserve Bank of Boston, which credited

Equitable's account. Eventually, Hodge withdrew from his

-3- 3

personal account the balance of the funds obtained from the

Treasury check.

By deposition, Equitable's senior vice president

and treasurer, Arthur E. Horgan, testified that he was

"uncomfortable" about the Hodge transaction in light of both

the sum involved and the fact that Hodge had deposited the

Treasury check into his personal account. As a result,

Horgan "contacted counsel and they suggested we get

something, a certificate of vote from the company indicating

that . . . Hodge has authority to transact business."

Equitable's president, James G. Perkins, then called Hodge

and requested that Atlantic provide a written corporate

resolution stating that Hodge had authority to indorse the

Treasury check and that he was authorized to deposit the

check into his personal account. Thereafter, Perkins

received a resolution ("resolution"), dated December 17,

1988, and signed by Wallace Johnson, the corporation's

secretary, which stated that the Board of Directors of

Atlantic had unanimously:

VOTED: That, Paget Hodge,
President of Atlantic Brands,
Inc. is hereby authorized to
endorse on behalf of the
Corporation any checks to his
order, said checks being drawn
or endorsed payable to said
Corporation, and deposit said
checks to his personal account.

-4- 4

After Atlantic defaulted, Inn Foods brought the

present action against Equitable and others1 to satisfy its

judgment. As alluded to above, Inn Foods's theory of

recovery against Equitable has two principal elements.

First, Inn Foods argues that Atlantic has a cause of action

for conversion against Equitable under Mass. Gen. L. ch. 106,

3-419(1)(c).2 Second, as a judgment creditor, it seeks to

reach and apply Atlantic's unfiled conversion claim.3 As

noted, Atlantic has never filed such a claim, nor has it ever

indicated an intent to do so.4 The parties entered cross-

motions for summary judgment. After a hearing, the district

court denied Inn Foods's motion and granted Equitable's.

From the bench, the court ruled that "the [i]ndorsement was

not a forgery and [Hodge] had apparent authority and indeed

[Atlantic] ratified his authority." Alternatively, the court



1. Equitable is the only defendant that is a party to this
appeal.

2. This is a diversity-based action and both parties agree
that Massachusetts law applies. This case is, in part,
governed by the Uniform Commercial Code ("the Code") as
adopted by Massachusetts and appearing at Mass. Gen. L. ch.
106. References to this statute will be by section number
only.

3. Mass. Gen. L. ch. 214, 3(6) authorizes an action by
creditors to reach and apply an unsatisfied debt.

4. From the record, it appears that Atlantic ceased to
function as an ongoing enterprise before the default judgment
occurred. As for Hodge, he was a named defendant below, but
failed to answer. Service of process on Hodge was made at
the Wormwood Scrubs prison in London, England.

-5- 5

ruled that Inn Foods could not reach and apply Atlantic's

putative cause of action. This appeal followed.

II. II.

DISCUSSION DISCUSSION

Inn Foods now argues that: (1) Atlantic has a

cause of action for conversion against Equitable because (a)

Hodge had neither actual nor apparent authority to indorse

the Treasury check and deposit it into his personal account,

and (b) Atlantic did not ratify Hodge's actions; and (2) it

may assert an action to reach and apply Atlantic's unfiled

cause of action for conversion. Although the appeal raises a

number of interesting issues, some of which involve

apparently unsettled questions of Massachusetts law, we

resolve the appeal by concluding that, as a matter of law,

Atlantic ratified Hodge's indorsement. Before discussing

ratification, we recite the standard of review.

A. Standard of Review

Summary judgment is appropriate when the record

reflects "no genuine issue as to any material fact and . . .

the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). Our review of an order granting

summary judgment is de novo. See, e.g., Vasapolli v.

Rostoff, 39 F.3d 27, 32 (1st Cir. 1994). We review the

record in the light most favorable to the nonmoving party,

-6- 6

and we indulge all reasonable inferences in that party's

favor. Id.

B. Ratification

Inn Foods's conversion theory rests on the premise

that Hodge was not authorized to indorse the Treasury check

to himself for deposit into his personal account. Under the

Code, conversion takes place when an instrument "is paid on a

forged indorsement." 3-419(c)(1). This section has

generally been interpreted to permit actions for conversion

where a negotiable instrument has been paid on either an

"unauthorized" or a "forged" indorsement. D & G Equip. v.

First Nat'l Bank of Greencastle, 764 F.2d 950, 955 (3d Cir.

1985) (collecting cases). Signatures on commercial

instruments are "presumed to be genuine or authorized." 3-

307(1)(b).5 Under the Code, "[a]ny unauthorized signature

may be ratified" by the principal. 3-404(2). We assume

but do not decide that Inn Foods met its initial burden of

establishing that Hodge's signature on the Treasury check was

unauthorized when presented. Thus, we proceed directly to

the question of whether Atlantic ratified Hodge's signature.

Unless they are displaced by a particular

provision, general common law principles, including those of



5. The presumption remains "unless and until evidence is
introduced which would support a finding of its non-
existence." 1-201(31).

-7- 7

agency, supplement the Code. 1-103; see also Terry v.

Kemper Ins. Co., 456 N.E.2d 465, 467 (Mass. 1983) (Code does

not displace settled principles of agency law). Under

Massachusetts law, ratification of an agent's acts may be

express or implied and, as a general proposition, the

principal must have full knowledge of all material facts.

See, e.g., Puritan Medical Ctr. v. Cashman, 596 N.E.2d 1004,

1008 (Mass. 1992); Perkins v. Rich, 415 N.E.2d 895, 898

(Mass. App. Ct. 1981), aff'd, 429 N.E.2d 1135 (Mass. 1982).

Massachusetts courts, however, do not always require that the

principal have actual knowledge. There may be ratification

when the principal "purposely shut[s] his eyes to means of

information within his own possession and control." Torpey

v. Interstate Equip. Leasing Corp., 760 F.2d 364, 365 (1st

Cir. 1985) (quotation omitted); see also Puritan, 596 N.E.2d

at 1008 (ratification may be implied where corporation

directors have "knowledge of such facts or circumstances as

would put a reasonable person on inquiry and which would lead

to full discovery") (quotation omitted).

Inn Foods argues that because the record is devoid

of any indication that Atlantic had full knowledge of the

facts, no ratification occurred. We do not agree. We think

the only reasonable conclusion to be drawn from the record is

that Atlantic ratified the transaction with knowledge at

least sufficient to satisfy the "deliberate ignorance"

-8- 8

standard recited above. The language of the resolution

itself speaks directly to the two critical elements of the

Treasury check transaction. The resolution authorizes Hodge

to both indorse checks on behalf of the corporation, and to

deposit those checks into his personal account. Moreover,

the resolution was dated nine days after Hodge presented the

Treasury check to Equitable. At a minimum, the terms of the

resolution as well as the surrounding circumstances should

have alerted Atlantic's directors that "something was afoot,"

Perkins, 415 N.E.2d at 898 (quotation omitted), especially in

light of the directors' duty to keep themselves informed of

the corporation's affairs. See, e.g., Puritan, 596 N.E.2d at

1008;6 Perkins, 415 N.E.2d at 898. 

Inn Foods makes the additional argument that the

resolution does not ratify the Treasury check transaction

because its language is cast in prospective terms only. Even

if we were to agree, Massachusetts law makes clear that

ratification can be implied when a principal with knowledge



6. The Puritan court noted that the failure of directors to
discharge their duty of supervision does not always lead to
ratification. Puritan, 596 N.E.2d at 1008. In Puritan, a
corporation's director sought to interpose ratification as a
defense to self-dealing. The present case involves an
entirely different set of circumstances as a third party,
Equitable, sought assurances from Atlantic as to the
authority of Hodge, an Atlantic agent. Under these facts, we
think Atlantic would be estopped from denying the
applicability of the duty to supervise.

-9- 9

makes no effort to repudiate a transaction.7 Irving Tanning

Co. v. Shir, 3 N.E.2d 841, 842 (Mass. 1936); see also

Restatement of Agency 2d 94 ("An affirmance of an

unauthorized transaction can be inferred from a failure to

repudiate it."). The rationale for this rule is plain. When

a principal fails to disavow promptly an act of his agent,

such a failure both thwarts a damaged third party's ability

to mitigate the effects of an unauthorized act and

perpetuates an inference of authority reposed in the would-be

agent. See Boice-Perrine Co. v. Kelley, 137 N.E. 731, 733

(Mass. 1923). Again, we do not think there can be reasonable

dispute that Atlantic had sufficient knowledge for

ratification and, there is no indication in the record that

Atlantic ever sought to repudiate this transaction.

In short, Atlantic had sufficient knowledge to

ratify by either acting (as it purported to do in the

resolution) or not acting (thereby acquiescing in the

Treasury check transaction). Either route leads to the same

conclusion: Atlantic ratified Hodge's indorsement and

deposit. Because Hodge's signature was authorized, Atlantic



7. On this point, we disagree with Inn Foods's contention
that Puritan, 596 N.E.2d at 1008, should be read as requiring
that a benefit accrue to the principal from the disputed
transaction before an implied ratification can be found.
While benefits received are certainly strong evidence that
the principal acquiesced in the agent's transaction, other
Massachusetts cases make clear that ratification can take
place in the absence of such a benefit. See, e.g., Boice-
Perrine Co. v. Kelley, 137 N.E. 731 (Mass. 1923). 

-10- 10

has no conversion cause of action against Equitable and,

thus, Inn Foods's claim must fail.

III. III.

CONCLUSION CONCLUSION

For the reasons discussed above, the decision of

the district court is

Affirmed. Costs to appellee. Affirmed Costs to appellee

-11- 11