United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit


No. 94-2106

COLONIAL COURTS APARTMENT COMPANY, ET AL.,

Plaintiffs, Appellants,

v.

PROC ASSOCIATES, INC., ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge] 



Before

Boudin, Circuit Judge, 
Coffin, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



Joseph V. Cavanagh, Jr., with whom Michael DiBiase and Blish & 
Cavanagh were on brief for appellants. 
Richard W. MacAdams with whom MacAdams & Wieck Incorporated was 
on brief for appellees.



June 21, 1995


STAHL, Circuit Judge. This case requires us to STAHL, Circuit Judge. 

determine whether letter-of-credit beneficiaries may recover

the value of the letters from the issuer's customer or the

customer's guarantors after the issuer dishonored the letters

and became insolvent. Interpreting applicable law and the

various agreements between the parties, we conclude that the

beneficiaries may not so recover. Thus, we affirm the

district court's grant of summary judgment for defendants-

appellees.

I. I. 

FACTUAL AND PROCEDURAL BACKGROUND FACTUAL AND PROCEDURAL BACKGROUND 

Resolving the issues in this case requires a

detailed recital of its somewhat complex factual background.

The magistrate's report is exceptionally helpful in

delineating the facts and we draw from it liberally.

Plaintiffs-appellants are four individuals and two

Ohio general partnerships (collectively, "appellants") who

owned, or whose assignors owned, three apartment complexes in

East Cleveland, Ohio. Appellants sold the apartments to

defendant-appellee Proc Associates, Inc. ("Proc

Associates"),1 which in turn assigned its interest as

 

1. Defendant-appellee Armand Procaccianti is a director and
president of Proc Associates. Defendant-appellee James
Procaccianti is a director, vice president, and treasurer of
Proc Associates. Hereinafter, we refer to Armand and James
Procaccianti collectively as "the Procacciantis."

-2- 2

purchaser to Euclid Properties ("Euclid"), an Ohio limited

partnership.2

Euclid paid $2.2 million in cash for the

properties. To cover the remainder of the purchase price,

Euclid executed four promissory notes ("promissory notes")

totalling $1.3 million. As sole security for the promissory

notes, the Marquette Credit Union ("Marquette") issued to

appellants four irrevocable standby letters of credit

("letters of credit") corresponding to each of the promissory

notes. By their terms, the letters of credit expired on May

31, 1991.

Before issuing the letters of credit, Marquette

entered into a reimbursement arrangement with Proc Associates

and the Procacciantis memorialized in a commitment letter

("commitment letter") dated March 16, 1990, a letter

agreement ("letter agreement") dated May 31, 1990, and a

guaranty agreement ("guaranty") also dated May 31, 1990,

(collectively, "reimbursement agreements"). In essence, the

reimbursement agreements provided that Proc Associates would

repay Marquette for amounts drawn on the letters of credit.

Further, the Procacciantis agreed to guaranty Proc

Associates' obligation to Marquette. As additional security

 

2. Euclid is constituted of limited partners defendant James
Procaccianti (95% interest) and defendant Armand Procaccianti
(4% interest) and general partner East Cleveland Properties,
Inc., an Ohio corporation. James Procaccianti is president,
secretary, and treasurer of East Cleveland Properties, Inc.

-3- 3

for the obligations assumed by the credit union as a result

of its issuance of the letters of credit, Marquette also

obtained a second mortgage on real property owned by Euclid.

On January 1, 1991, the Rhode Island governor

closed Marquette because the deposit insurer for Marquette

had failed and Marquette did not have federal insurance. On

May 17, 1991, Maurice C. Paradis was appointed as permanent

receiver ("receiver") for Marquette.

On April 30, 1991, Euclid failed in its obligation

to renew or replace the letters of credit.3 On May 21 and

29, 1991, appellants presented the letters of credit with all

required documents to the receiver for payment. Appellants

did not consent to an extension of time to honor the letters.

Dishonor occurred.

During the remainder of 1991, appellants pursued

their claims against Marquette in three separate actions.

First, in an Ohio state court, appellants sought assignment

of the collateral held by Marquette and the receiver under

the letters of credit, damages against Marquette and the

receiver for wrongful dishonor, and injunctive relief.

Second, in the U.S. District Court for Rhode Island,

 

3. Default occurred under the promissory notes upon failure
by Euclid to renew or replace the lapsed letters of credit by
April 30, 1991. Additionally, each of the letters of credit
themselves provided for presentment for payment if there was
no renewal by April 30, 1991.

-4- 4

appellants sought to enjoin the distribution of assets by

Marquette and the receiver pursuant to the priority scheme

set forth in the Depositors Economic Protection Act of 1991

("DEPCO"), the Rhode Island legislation enacted in the

aftermath of that state's credit union insurance crisis.

Third, in the receivership proceedings pending in Rhode

Island state court, appellants filed proofs of claim for the

amount owed under the letters of credit and for a preference

as to the collateral held by Marquette or the receiver.

On July 2, 1992, appellants and the receiver

entered into a written settlement agreement ("settlement"),

the terms of which provided that appellants would dismiss the

three pending proceedings in Ohio and Rhode Island in

exchange for $500,000 and the assignment ("assignment") by

the receiver of his interest in the letter agreement, the

commitment letter, the guaranty, and the mortgage, including

any claims of the receiver against the defendants under those

instruments. By its terms, payment under the settlement

"shall not be deemed to or constitute a payment under or by

virtue of the [l]etters of [c]redit." On July 31, 1991,

Marquette became insolvent.

Appellants then brought the present action against

Proc Associates and the Procacciantis for the value of the

letters of credit. Appellants set forth, in separate counts,

three theories of recovery. First, appellants argued that,

-5- 5

as Marquette's assignees, they could recover from defendants

pursuant to the reimbursement agreements. Second, appellants

contended that, under R.I. Gen. Laws 6A-5-117,4 which

codifies Section 5-117 of the Uniform Commercial Code, they

were entitled to realize on the collateral held by Marquette

and the receiver. Third, appellants argued that they were

entitled to recover under general equitable principles.

Defendants moved for summary judgment. Considering only

recovery under the first theory, dealing with the

reimbursement agreements, the magistrate judge determined

that appellants could not recover from defendant Proc

Associates, but that they could from the Procacciantis.

Deeming the remaining two theories subsumed by his analysis,

the magistrate did not reach those arguments. Following

objection from defendants, the district court remanded the

report and recommendation to the magistrate. The magistrate

stood by his original recommendation. Upon review, the

district court found no liability attached to the

Procacciantis under the terms of the guaranty and rejected

that portion of the magistrate's report as to their

liability. Judgment entered for defendants on all counts.

This appeal followed.

II. II. 

 

4. The parties do not dispute that, in this diversity-based
action, the substantive law of Rhode Island governs.

-6- 6

DISCUSSION DISCUSSION 

After reciting the standard of review, we take up

each of appellants' three theories of recovery. 

A. Standard of Review 

Summary judgment is appropriate when the record

reflects "no genuine issue as to any material fact and . . .

the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). We review a grant of summary judgment

de novo. See, e.g., Inn Foods, Inc. v. Equitable Coop. Bank, 

45 F.3d 594, 596 (1st Cir. 1995). We review the record in

the light most favorable to the nonmoving party, and we

indulge all reasonable inferences in that party's favor. Id. 

B. The Reimbursement Agreements 

On appeal, appellants argue that the terms of the

reimbursement agreements render the Procacciantis liable to

Marquette. Specifically, appellants contend that, under the

language of the guaranty, liability attached to the

Procacciantis on June 3, 1991, when Marquette was required to

make full payment under the letters of credit. Thus,

appellants argue that, under the terms of the assignment,

they are entitled to recover the $1.3 million represented by

the letters of credit. Because appellants' theory

misconstrues the nature of a letter-of-credit transaction and

is inconsistent with the operative language of the parties'

agreements, we do not agree.

-7- 7

To put this case in proper perspective, we start

with general principles. Letter-of-credit transactions are

three-party arrangements involving two parties to a

commercial transaction and a financial institution. The

financial institution, which is the issuer (here, Marquette),

at the direction of its customer, usually the buyer (here,

defendant Euclid), issues a letter of credit to a beneficiary

or beneficiaries, usually the seller (here, appellants). The

principal purpose of a standby letter of credit is a means

for the beneficiary-seller to ensure that if there is a

default on the underlying contract between it and the

customer-buyer, then the beneficiary-seller will have a ready

source of funds to satisfy the debt owed. See, e.g., Ground 

Air Transfer, Inc. v. Westates Airlines, Inc., 899 F.2d 1269, 

1272 (1st Cir. 1990). Thus, the standby letter of credit

acts as a "back up" against customer default on obligations

of all kinds. James J. White & Robert S. Summers, Uniform 

Commercial Code 19-2, at 809 (3d ed. 1988) (hereinafter, 

"White & Summers"). Additionally, the beneficiary may

request a letter of credit to ensure that should any

contractual dispute arise, it will "`wend [its] way toward

resolution with the money in [the beneficiary's] pocket,

rather than in the pocket' of his adversary." Ground Air, 

899 F.2d at 1272 (quoting Itek Corp. v. First Nat'l Bank of 

Boston, 730 F.2d 19, 24 (1st Cir. 1984)). 

-8- 8

To effect these commercial purposes, courts have

considered the letter of credit to be a separate agreement

between the issuer and the beneficiary, wholly distinct from

the underlying contract between the customer and the

beneficiary. Id.; see also U.C.C. 5-114, comment 1 ("The 

letter of credit is essentially a contract between the issuer

and the beneficiary and is recognized by this Article as

independent of the underlying contract between the customer

and the beneficiary."); White & Summers, 19-2, at 812 ("The

most unique and mysterious part of this [letter-of-credit]

arrangement is the so-called `independence principle.' The

principle states that the bank's obligation to the

beneficiary is independent of the beneficiary's performance 

on the underlying contract."). Similarly, "the obligation of

the issuer to pay the beneficiary is also independent of any

obligation of the customer to its issuer." White & Summers,

19-2, at 811. Thus, as with other letter-of-credit

arrangements, see id. at 812, the one in this case involves 

two contracts (the underlying purchase-and-sale agreement

between Proc Associates and appellants and the reimbursement

arrangement between Proc Associates and Marquette) and one

letter of credit.

At the center of this dispute is the operative

language of the letter agreement and the commitment letter,

as guaranteed by the Procacciantis, which establish

-9- 9

Marquette's right to reimbursement. The letter agreement

states: "that if at any time prior to the expiration of [the]

[l]etters of [c]redit, [Marquette] is required to make

payment," Proc Associates must repay Marquette pursuant to

the commitment letter. The commitment letter specified that

"if the [l]etter of [c]redit is drawn upon," then Proc

Associates must make to Marquette certain interest payments

and, further, "final payment of all outstanding principal and

all interest payable three years from the date of the

issuance of the [l]etter of [c]redit." In addition, the

Procacciantis guaranteed Proc Associates' obligation. The

guaranty provides that the Procacciantis "guarantee[] to

Lender [Marquette] . . . the punctual payment, . . . as and

when due (whether by acceleration or otherwise) of all

[o]bligations requiring payment." The term "obligations" is

defined as:

all indebtedness, obligations and
liabilities of Borrower [Proc Associates]
to Lender [Marquette] of every kind and
description (including without limitation
any and all of the foregoing arising in
connection with any letters of credit
issued by Lender for the account of
Borrower), direct or indirect, secured or
unsecured, joint or several, absolute or
contingent, due or to become due, whether
for payment or performance, now existing
or hereafter arising, regardless of how
the same arise or by what instrument,
agreement or book account they may be
evidenced, or whether evidenced by any
instrument, agreement or book account;
including without limitation, all loans
(including any loan by renewal or

-10- 10

extension), all indebtedness, all
undertakings to take or refrain from
taking any action, all indebtedness,
liabilities or obligations owing from
Borrower to others which Lender may have
obtained by purchase negotiation,
discount, assignment or otherwise, and
all interest, taxes, fees, charges,
expenses and attorneys' fees chargeable
to Borrower or incurred by Lender in
connection with any transaction between
Borrower and Lender.

The parties do not dispute that appellants properly

presented the letters of credit to Marquette for payment,

that payment became due on June 3, 1991, and that dishonor

occurred when no payment was made. As noted above,

appellants argue that Marquette's nonpayment notwithstanding,

the Procacciantis' obligation under the guaranty was

triggered on June 3, 1991. Specifically, they point to the

language defining "obligations" under the guaranty, arguing

that it is so broad as to render the Procacciantis liable

when the $1.3 million payment on the letters of credit came

due.

Appellants' argument misconceives the nature of the

letter-of-credit obligation. As our discussion above makes

clear, applicable commercial law provides that the letter-of-

credit obligation is that of the issuer alone, and that

obligation is independent of either the underlying contract

or any reimbursement agreement. Upon proper presentment, the

liability ran to Marquette and not to Proc Associates. Thus,

proper presentment did not create, under the language of the

-11- 11

guaranty, "indebtedness, obligations and liabilities of

Borrower to Lender of every kind and description . . . . 

direct or indirect, secured or unsecured, joint or several,

absolute or contingent, due or to become due, whether for

payment or performance, now existing or hereafter arising"

(emphasis added). 

The agreements between Marquette, Proc Associates,

and the Procacciantis did not alter the basic legal

relationships in a letter-of-credit transaction. When the

language of a contract is clear and unambiguous, we accord

the language its plain and natural meaning. In Re Newport 

Plaza Assocs., 985 F.2d 640, 645 (1st Cir. 1993) (citing 

Dudzik v. Leesona Corp., 473 A.2d 762, 765 (R.I. 1984)). 

Under the letter agreement, Proc Associates (the Borrower)

became obligated to Marquette (the Lender) when Marquette was

required to make payment and, under the commitment letter,

when the letters of credit were actually drawn upon. Because

both conditions did not obtain, Proc Associates incurred no

"indebtedness, obligations and liabilities" to Marquette.

Consequently, there being no "obligations [of Proc

Associates] requiring payment," there was nothing for the

Procacciantis to guaranty. Thus, as Marquette's assignee

-12- 12

under the settlement, appellants accede to no enforceable

rights against the Procacciantis.5 

Because of the unusual (and for appellants,

unfortunate) turn of events, appellants essentially seek to

convert the Procacciantis' guaranty of Proc Associates'

obligations into a guaranty of Marquette's obligations.

However, neither the law nor the language of the

reimbursement agreements sustain such an interpretation.

Thus, we conclude that the district court properly granted

summary judgment as to all defendants on count one.

C. U.C.C. 5-117 

Appellants next argue that, pursuant to R.I. Gen.

L. 6A-5-117 (codifying U.C.C. 5-117),6 they are entitled

 

5. We note that, under the terms of the settlement, the
$500,000 payment by the receiver to appellants does not
constitute a payment under the letters of credit. At oral
argument it was suggested that this language was included
because the settlement resolved three separate lawsuits
involving issues not related to the letters of credit.

6. In relevant part, 6A-5-117 provides:

(1) Where an issuer . . . becomes
insolvent before final payment under the
[letter of] credit . . . the receipt or
allocation of funds or collateral to
secure or meet obligations under the
[letter of] credit shall have the
following results:

(a) To the extent of any funds
or collateral turned over after
or before the insolvency as
indemnity against or
specifically for the purpose of
payment of drafts or demands

-13- 13

to collateral held by Marquette and the receiver. The

"collateral" that appellants seek to realize on are the

letter agreement, the commitment letter, and the guaranty.7

Assuming that these agreements constitute collateral within

the meaning of section 5-117 -- a point disputed by

defendants -- we fail to see how its acquisition by

appellants advances their cause. As the foregoing discussion

outlines in detail, under the provisions of the settlement,

 

for payment drawn under the
designated credit, the drafts
or demands are entitled to
payment in preference over
depositors or other general
creditors of the issuer or
bank; and

(b) On expiration of the
credit or surrender of the
beneficiary's rights under it
unused any person who has given
such funds or collateral is
similarly entitled to return
thereof; and

(c) A charge to a general or
current account with a bank if
specifically consented to for
the purpose of indemnity
against or payment of drafts or
demands for payment drawn under
the designated credit falls
under the same rules as if the
funds had been drawn out in
cash and then turned over with
specific instructions.

7. As noted above, a mortgage was also given as collateral.
However, appellants concede that, because the receiver
effectively assigned his interest in the mortgage, it is not
relevant to this case.

-14- 14

Marquette assigned its rights under these documents to

appellants. However, the terms of the settlement and the

facts of the case render those rights inoperative against

defendants. Nothing in section 5-117 -- which operates to

segregate an insolvent institution's letter-of-credit

liabilities and security from depositor liabilities and

assets, see R.I. Gen. L. 6A-5-117, official comment -- 

enhances appellants rights vis-a-vis defendants. At most,

appellants would accede to rights already acquired under the

terms of the settlement. Therefore, we conclude that the

district court properly granted summary judgment as to count

two.

D. General Equitable Principles 

Finally, appellants invite us to employ "equitable

principles" on their behalf. Appellants rely on authority

that is neither controlling nor even remotely analogous to

the facts in this case. Appellants also vaguely assert that

denying them recovery would result in unjust enrichment.

From our review of the record, it is not at all apparent that

the balance of equities leans in appellants' favor. After

all, upon dishonor, appellants had an enforceable right

against Marquette. R.I. Gen. L. 6A-5-114(1), 6A-5-115(1).

They chose to reduce that right, along with other claims

asserted in the three suits, to a lump-sum payment of

$500,000 plus assignment of Marquette's rights against

-15- 15

defendants. Those rights proved to be of no value. And, for

reasons not immediately apparent but in any event beyond the

scope of the present case, appellants also agreed to language

foreclosing their right to recover -- as Marquette's assignee

-- the $500,000 settlement payment. Appellants may have

entered into an ill-considered agreement that indirectly

reduced defendants' liability, but that does not constitute

unjust enrichment, see R & B Elec. Co. v. Amco Constr. Co., 

471 A.2d 1351, 1355-56 (R.I. 1984) (setting forth elements of

unjust enrichment), and we know of no equitable principle

that would operate to displace applicable law and the

parties' agreements. Accordingly, the district court

properly granted summary judgment as to count three of

appellants' complaint.

III. III. 

CONCLUSION CONCLUSION 

For the forgoing reasons, the decision of the

district court is affirmed. affirmed. 

-16- 16